KING GENERAL CONTRACTORS,
INC., Appellant,

v.

REORGANIZED CHURCH OF JESUS
CHRIST OF LATTER DAY
SAINTS, Respondent.

No. 73804.

Supreme Court of Missouri,
En Banc.

Dec. 17, 1991.
Rehearing Denied Jan. 28, 1992.

Robert K. Ball, II and Karl H. Timmerman, Kansas City, for appellant.

George A. Kapke and Alvin R. Lundgren, Independence, for respondent.

RENDLEN, Judge.

King General Contractors, Inc. (King) appeals the trial court's dismissal of its suit for damages against Reorganized Church of Jesus Christ of Latter Day Saints (RLDS). We must decide whether the current action is barred by the judgment of an earlier case prosecuted against RLDS and Tri–Cote Sales of Kansas City, Inc. (Tri–Cote) arising from the same contracts and the underlying facts at bar. The cause comes here on transfer after opinion from the court of appeals affirming the judgment of the trial court.

On February 22, 1984, Tri–Cote and RLDS entered a contract by which Tri–Cote agreed for the price of $448,016 to encapsulate asbestos-containing materials at RLDS' headquarters building and blow a ⅜-inch coating on the treated areas for sound control, the color to be approved by RLDS. This contract designated King as the subcontractor to do the work and coincidentally Tri–Cote entered a contract with King as the working subcontractor at the price RLDS was to pay Tri–Cote, and King in return would pay Tri–Cote $56,000 for "supervisory services and testing."

Among the problems King encountered, the coating color was unacceptable to RLDS and the encapsuling material began falling from the ceilings. A RLDS representative ordered King to correct the latter problem by "tamping and rolling" the material, which required approximately $7,000 additional expense for King. Finally, RLDS informed Tri–Cote the work was not satisfactory and on July 12, King was discharged.

King's three count petition in the original suit (*King I*) against Tri–Cote and RLDS, appropriately described by the trial court as "inartfully drafted," provides a rich ex-

ample of "potpourri" petition drafting. Count I, set forth below in pertinent part[1], directed against Tri–Cote and RLDS, asserted several claims and while much of the language sounded in tort, the damages sought and the caption to the petition were those of an action in contract. Further, Count I contained a discrete claim against RLDS for extra work (quantum meruit) and finally sought punitive damages. While joining two or more theories of recovery in a single count has been criticized, see *King v. Morris*, 315 S.W.2d 497, 498 (Mo.App.1958), the trial court suffered Count I citing Rule 55.10 which countenances different claims in a single count.

Count II, which sought recovery of $3,000 from Tri–Cote and RLDS for the unearned portion of a performance bond to which King claimed it was entitled, has no relevance to the present case.

Count III, against RLDS alone, alleged that RLDS "capriciously and arbitrarily interfered with plaintiff's ability to complete his contractual obligation by insisting that the superintendent" be dismissed and attempting to impose RLDS' own superintendent "all to the impediment of plaintiff's ability to perform the terms of his contract, and in interference with his contract with defendant Tri–Cote."

On the first day of trial in King I, this colloquy occurred in open court:

Mr. Morris: [attorney for Tri–Cote] Be that as it may, as I understand you, Mr. Ball, on behalf of plaintiff King General Contractors, you're telling us that realizing a profit from the balance of the work yet to be done, in the sum of $28,000;

d) that plaintiff was by direction of defendant Reorganized Church and acquiesce [sic] of defendant Tri–Cote directed to and in fact did additional work items beyond the terms of the incorporated contract, specifically including:

. . . . .

[d] 3. additional rolling and tamping of the project area at the expenditure of five days of time with a crew of seven men for which an additional $7,000 is owing.

. . . . .

That all of the foregoing constituted wrongful actions and tortuous [sic] and conspiratorial actions against this plaintiff, culminating in the breach of contract as aforesaid; were knowingly and willfully and maliciously made in derogation of this plaintiff's contractual rights, without excuse in law or fact, and with a reckless disregard of plaintiff's rights and that not only should plaintiff be given judgment against defendants for his actual damages as delineated above, but he should further be awarded punitive damages against defendants and each of them and both of them jointly and separately as punishment to these defendants, and as a warning to other would-be wrong doers.

WHEREFORE, plaintiff prays judgment against defendants and each of them jointly and separately for actual damages in the sum of SIXTY FIVE THOUSAND FOUR HUNDRED SIXTY DOLLARS ($65,460.00) and for punitive damages in the sum of ONE MILLION DOLLARS ($1,000,000.00), totalling to an aggregate of ONE MILLION SIXTY FIVE THOUSAND FOUR HUNDRED SIXTY DOLLARS ($1,065,460.00) and for his costs herein incurred and expended.

---

1. Portions of Count I are:

3. That plaintiff did undertake to perform his contractual obligations and did actually perform portions thereof in a workmanlike manner, but that on July 12, 1984, defendant Reorganized Church did wrongfully and maliciously without excuse in law or fact induce defendant Tri–Cote to breach its contract with plaintiff, conspiring with defendant Tri–Cote to cause the contract to in fact be breached and directly and proximately thereby damaging plaintiff as hereinafter more particularly set forth:

4. That the damages to plaintiff as aforesaid included:

a) plaintiff, at the time of the breach as aforesaid, had made an out-of-pocket expenditure of $5,000 in anticipation of and preparation to resume its contractual undertaking, subsequent to what had been announced as but a temporary intermission in the work to be performed, which expenditure is a loss to this plaintiff and with the contract breached and unrecoverable as previously anticipated through overall contract payments by defendant Reorganized Church through defendant Tri–Cote;

b) that the breach of contract as aforesaid and the ordering of this plaintiff off the premises as subcontractor, resulted in this plaintiff terminating his efforts under the contract, but despite the fact that such termination was brought about through the wrongful conspiracy of the defendants, defendants refused to pay over monies due and owing this plaintiff for work already accomplished, and specifically the sum of $27,000, refusing to provide plaintiff with any reason adequate in law or fact as to the retention of these monies;

c) that but for the wrongful breach and conspiracy as aforesaid, this plaintiff would have completed the contract as agreed upon,

you dismiss and make no claim on any tort aspect or recitation contained in the petition; is that correct?

 Mr. Ball: [attorney for King] Sure.

 Mr. Morris: Or any count thereof?

 Mr. Ball: I thought that's what I said.

 Mr. Morris: I want to be sure it's all in contract and none of it's in tort.

 Mr. Ball: That's what I thought I said.

At the close of plaintiff's evidence, King moved to amend its pleadings to conform to the proof (Rule 55.33(a)) and allow a claim as third-party beneficiary under the Tri-Cote and RLDS contract. The trial court denied this motion and then addressing RLDS' motion to dismiss, noted Count I was essentially a claim for breach of contract and because King was not in privity with RLDS, it was not positioned to assert a claim on contract against that defendant. Further, King had failed to properly raise a third-party beneficiary claim and had abandoned all claims in tort against RLDS. In sum, all portions of Count I relative to the contract claim were found in favor of and a verdict directed for RLDS. However, the court allowed the portion of Count I alleging King performed additional work at the direction of RLDS on quantum meruit to proceed.

Further, it was determined that the claims under Count II were variations on the theme for breach of the contract to which RLDS was not a party and, accordingly, a verdict was directed in its favor.

Count III was interpreted as a claim for tortious interference of contract solely against RLDS and, directing a verdict against plaintiff, the court stated: "In light of what was stated at the very outset, that this case was being tried on a contractual theory and no tort theory, I don't see that this count has any place in this lawsuit."

The remaining portion of Count I against Tri-Cote and the quantum meruit claim against RLDS were submitted to the jury with final judgment entered on the verdict March 8, 1988, awarding King $42,149.99 against Tri-Cote and $7,000 against RLDS reflecting the extra work performed by King at RLDS' direction. There was no appeal from that judgment.

On April 28, the following year King filed the current two count petition (*King II*) against RLDS alleging breach of contract under a third-party beneficiary theory and next a claim for tortious interference of contract. RLDS moved to dismiss alleging King's claims were barred by the doctrines of collateral estoppel, res judicata, splitting a cause of action, election of remedies, compulsory joinder and lack of privity. Attached to the motion were various exhibits, which will presently be discussed.

King responded with a counter-affidavit demanding a hearing to adduce "additional facts and evidence pertinent to the issue."

On February 7, 1990, the trial court denied King's demand for a hearing and granted RLDS' motion for dismissal stating that "Counts I & II are dismissed under the doctrine of collateral estoppel."[2] This appeal followed and we affirm.

King contends the court's refusal to conduct a hearing on RLDS' motion to dismiss was violative of its rights to due process and was in contravention of Rules 55.27(a) and 74.04(c). Although RLDS delineated its pleading a motion to dismiss and the trial court employed the term "dismissed" in its order, the court's action was in essence a grant of summary judgment in favor of RLDS. Rule 55.27(a) enumerates twelve possible defenses which may be raised by motion. As noted above, RLDS claimed that King's count alleging tortious interference of contract was barred by the doctrine of collateral estoppel, res judicata, "compulsory joinder of all claims into one action" and "the prohibition against splitting or severing causes of action." While not expressly stated in the Rule, defenses of res judicata and issue preclusion are in essence defenses alleging the plaintiff has failed to state a claim upon which relief may be granted. Rule 55.27(a)(6); *Terre Du Lac Association, Inc. v. Terre Du Lac, Inc.*, 737 S.W.2d 206, 212 (Mo.App.1987); *Johnson v. Raban*, 702 S.W.2d 134, 136 (Mo.App.1985). Such defenses may suc-

---

2. The court also mistakenly referred to a non-existent Count III in its ruling.

ceed only if uncontroverted facts demonstrate the present suit is groundless, *Johnson v. Raban,* 702 S.W.2d at 136, but the trial court must take judicial notice of the prior judgment. *Terre Du Lac Association, Inc. v. Terre Du Lac, Inc.,* 737 S.W.2d at 212.[3]

Rule 55.27(a) further provides:

If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for *summary judgment* and disposed of as provided in Rule 74.-04, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 74.04. (emphasis added)

Interpreting this rule, the court in *Black Leaf Products Company v. Chemsico, Inc.,* 678 S.W.2d 827 (Mo.App.1984), held that a movant submitting various exhibits including a deposition with its motion to dismiss had transformed the action to one for summary judgment, *id.,* 678 S.W.2d at 829, and though the trial court termed its action a dismissal, introduction of matters outside the pleadings which were accepted and considered by the court, automatically transformed the action. *Id.*

■ Such is this case. With its motion to dismiss, RLDS attached four exhibits: copies of the original petition in *King I,* the underlying contract, the court's order in *King I* granting the directed verdict, and the court's judgment in *King I.* King responded with its affidavit in opposition accompanied by the following: copies of all jury instructions from *King I,* a partial transcript of the *King I* testimony and a copy of RLDS' motion for directed verdict

filed in *King I.* The acceptance and consideration of this evidence by the court effectively "transformed" the proceeding to one under Rule 74.04.

■ Having identified the nature of the action, we address King's allegation that the motion court's denial of its request for hearing constituted a denial of due process guaranteed under both the United States and Missouri constitutions.

Great caution must be exercised in granting summary judgment as it "borders on denial of due process." *Y.G. v. Jewish Hospital of St. Louis,* 795 S.W.2d 488, 494 (Mo.App.1990). Missouri cases reveal divergent views as to the necessity of a hearing on motions for summary judgment. Rule 74.04 does not expressly require a hearing but Rule 74.04(c) directs that notice of the motion be "served at least ten days before the time fixed for the hearing," and by implication such is contemplated. The cases, however, cover the waterfront from those which state a hearing is not required, *San Kraus Co. v. State Highway Commission,* 416 S.W.2d 639, 641 (Mo.1967); *Harris v. Nichols,* 714 S.W.2d 540, 542 (Mo. App.1986); *Brown v. Crow,* 564 S.W.2d 599, 600 (Mo.App.1978); *Tobler's Flowers, Inc. v. Southwestern Bell Telephone Co.,* 632 S.W.2d 15, 18 (Mo.App.1982), to those holding that Rule 74.04 mandates an evidentiary hearing. *Lawson v. St. Louis–San Francisco Railway Co.,* 629 S.W.2d 648, 649 (Mo.App.1982); *State ex rel. Boyer v. Stussie,* 592 S.W.2d 269, 273 (Mo.App. 1979).

Recently this Court faced a similar issue in *Ronollo v. Jacobs,* 775 S.W.2d 121 (Mo. banc 1989). There, although a hearing date had been set by the trial court and the opponent was unable to attend, the court

---

**3.** As suggested by the concurring opinion, Rule 55.08 lists various matters constituting affirmative defenses. Here RLDS, responding to the petition, moved to dismiss and for the reasons hereinabove discussed that motion was treated as one for summary judgment. Rule 55.08 cited by the concurring opinion provides that when a party mistakenly names a pleading, the court shall treat the pleading as if there had been a proper designation. Here RLDS (regardless of the caption) asserted in its motion that King's

claims were barred as a matter of law under principles of collateral estoppel, res judicata and splitting a cause of action. The trial court under Rule 55.27(a) as previously discussed or under Rule 55.08 correctly considered and ruled these defenses raised by the pleadings and under Rule 55.27(a) when matters outside the pleadings were presented to the court the motion was "treated as one for summary judgment and disposed of as provided in Rule 74.04."

proceeded and summary judgment was granted. Sustaining that action, we noted that Rule 74.04(c) does not clearly direct the trial court to conduct a hearing but such is to ensure that a party has the opportunity to assemble and present evidence in support of his position. *Id.* at 125. In *Ronollo*, the opposing party had notice of the motion for summary judgment and had filed an affidavit and suggestions in opposition to the motion alleging material facts remained at issue, but failed to state with specificity in his motion or on appeal any additional evidence he would have presented had he been present at the hearing. *Id.* at 125–126.

■ This closely parallels the case at bar. Here no hearing had been set, but eight months had elapsed from the time of RLDS' filing for summary judgment until the court's ruling. King had abundant opportunity to present any evidence it had and seven months after receiving RLDS' motion, King filed its affidavit with more than 50 pages of exhibits attached. The court had before it the original petition in *King I*, all relevant portions of the transcript addressing RLDS and King from the previous action, a copy of RLDS' motion for directed verdict in *King I*, a copy of the directed verdict order, and a copy of the judgment from *King I*. We are at a loss to see what further, short of calling the trial judge from *King I* as a witness, King could have put before the hearing court. Where as here, the asserted bases for summary judgment are collateral estoppel or res judicata and the prior judgment and pleadings demonstrate such is the case, failure to conduct an evidentiary hearing is not error. *Johnson v. Raban*, 702 S.W.2d 134, 136 (Mo.App.1985). King, though having requested a hearing, has not suggested any additional fact it would have presented; accordingly no violation of its procedural due process rights has been shown.

Turning to the substantive contentions, on summary judgment we review the record in a light most favorable to the aggrieved party, *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241, 244 (Mo. banc 1984); however, it will not be set aside if supported by any theory, albeit one not reached by the trial court. *Id.*, 676 S.W.2d at 243.

■ The trial court found both of King's counts against RLDS barred by collateral estoppel (issue preclusion). That theory means that when an issue of ultimate fact has been determined by a valid judgment, it may not again be litigated between the same parties. *State v. Cannady*, 670 S.W.2d 948, 951 (Mo.App.1984). The Court in reviewing the appropriateness of collateral estoppel should consider: (1) whether the issue decided in the prior adjudication was *identical* to the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; and (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication. *Hudson v. Carr*, 668 S.W.2d 68, 70 (Mo. banc 1984). A fourth factor, on which there is no consensus, is whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. *Id.* The critical distinction between collateral estoppel and res judicata is that the former operates only as to issues previously litigated but *not* as to matters *not* litigated in the prior action though such might properly have been determined. *American Polled Hereford Association v. City of Kansas City*, 626 S.W.2d 237, 241 (Mo.1982). In the case *sub judice*, the third factor, identity of parties, has been met. The pressing question is whether there exists an identity of issues.

At the close of plaintiff's case in the first action, King pursuant to Rule 55.33(b) attempted to amend the pleadings by adding a third-party beneficiary claim against RLDS. Denying this motion, the trial court noted that King at the initial bench conference announced its intent to proceed on a claim as though a third-party beneficiary contract had been pleaded against RLDS but did not seek leave to amend its petition. Further RLDS had resisted from the outset King's allegation that this was a third-party beneficiary contract and that the requirements under Rule 55.33(b) had not been met. In essence the trial court

decided the issue was not tried by express or implied consent of the parties and necessarily was deciding that King failed in its attempt to prove a third-party beneficiary contract. We have not been provided a full transcript of that proceeding (*King I*) but the trial court's findings were not tested on appeal and because of King's failure so to do, the judgment was final and binding. The trial court granted RLDS' motion for directed verdict as to Count I (except that subcount relating to quantum meruit) because it failed to plead a cause of action on a third-party beneficiary claim, inasmuch as King was not a party to the Tri–Cote/RLDS' contract.

 Collateral estoppel only pertains to those issues which were necessarily and unambiguously decided, *Green v. Montgomery Ward & Company, Inc.*, 775 S.W.2d 162, 164 (Mo.App.1989), and King had neither pleaded nor proved a third-party beneficiary contract against RLDS. As to Count III, the trial court merely recognized King's earlier dismissal of all claims in tort and it appears such findings cannot be said to be *identical* to the claims raised in *King II*. We therefore conclude the trial court's directing of the verdicts with regard to RLDS in *King I* was insufficient to collaterally estop King from asserting his claims against RLDS in *King II*; nevertheless we find these claims are barred by res judicata. For res judicata to adhere, "four identities" must occur: 1) identity of the thing sued for; 2) identity of the cause of action; 3) identity of the persons and parties to the action; and 4) identity of the quality of the person for or against whom the claim is made. *Norval v. Whitesell*, 605 S.W.2d 789, 790 (Mo. banc 1980). Unlike collateral estoppel, it applies not only to points and issues upon which the court was required by the pleadings and proof to form an opinion and pronounce judgment, but to every point properly belonging to the subject matter of litigation and which the parties, exercising reasonable diligence, might have brought forward at the time. *Bover v. Long*, 676 S.W.2d 893, 895 (Mo.App.1984); *Huska v. Huska*, 721 S.W.2d 120, 121 (Mo.App.1987); *Terre Du Lac Association, Inc. v. Terre Du Lac, Inc.*, 737 S.W.2d 206, 212 (Mo.App. 1987). Put otherwise, a party may not litigate an issue and then, upon an adverse verdict, revive the claim on cumulative grounds which could have been brought before the court in the first proceeding. *The Society for the Preservation of St. Louis Lodge # 20 v. Masonic Temple Association of St. Louis*, 692 S.W.2d 837, 839 (Mo.App.1988). Separate legal theories are not to be considered as separate claims, even if "the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief." *Siesta Manor, Inc. v. Community Federal Savings and Loan Association*, 716 S.W.2d 835, 839 (Mo.App.1986). The doctrine takes on the character of the rule against splitting a cause of action and it is aptly stated in *Burke v. Doerflinger*, 663 S.W.2d 405, 407 (Mo.App.1983):

> Res judicata and splitting a cause of action are closely related because both are designed to prevent a multiplicity of lawsuits.
>
> A cause of action which is single may not be split and filed or tried piecemeal, the penalty for which is that an adjudication on the merits in the first suit is a bar to a second suit. In general, the test for determining whether a cause of action is single and cannot be split is: 1) whether separate actions brought arise out of the same act, contract or transaction; 2) or whether the parties, subject matter and evidence necessary to sustain the claim are the same in both actions. The word "transaction" has a broad meaning. It has been defined as the aggregate of all the circumstances which constitute the foundation for a claim. It also includes all of the facts and circumstances out of which an injury arose. [Citations omitted].

The Restatement (Second) of Judgments § 24 (1982) articulates the principle in this manner:

> Sec. 24. Dimensions of "Claim" for Purposes of Merger or Bar—General Rule Concerning "Splitting"

(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

(2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

Count III (*King I*) alleges that RLDS had fired superintendent David Metzler and attempted to impose its own "substitute superintendent," thus impeding King's performance of the contract. Plaintiff's counsel at trial in *King I* admitted that the replacement of Metzler had been at issue in the case. King's tortious interference claim arises from the same transaction or series of connected transactions out of which the cause of action arose. It is merely a variant theory, emphasizing different facts and thus is barred by res judicata.

King's reliance on *Abeles v. Wurdack,* 285 S.W.2d 544 (Mo.1956), is misplaced. There, this Court recognized the two suits concerned involved separate causes of action arising from different contracts. *Id.* at 547. Having so found, the next step was to identify what "ultimate facts"[4] had been determined in the first case which could be accorded res judicata effect in the second action. *Id.* 548. Here we are not so concerned as King's suits against RLDS arise from the same transactions and because the current claims are barred by res judicata, and we need not address the other grounds raised by the motion to dismiss.

*Zafft v. Eli Lilly & Co.,* 676 S.W.2d 241, 243 (Mo.banc 1984).

Affirmed.

ROBERTSON, C.J., and COVINGTON, HOLSTEIN, and BENTON, JJ., concur.

PREWITT, Special Judge, concurs in result.

BLACKMAR, J., concurs in separate opinion filed.

THOMAS, J., not participating because not a member of the Court when case was submitted.

BLACKMAR, Judge, concurring.

I concur. I question the statement in the principal opinion that "defenses of res judicata and issue preclusion are in essence defenses alleging the plaintiff has failed to state a claim upon which relief may be granted." Res judicata and estoppel are specifically listed in *Rule 55.08* as affirmative defenses which must be pleaded. These defenses, however, often can be established before trial by uncontroverted evidence, and so are appropriate grounds for summary judgment under *Rule 74.04.*

I also agree that the absence of a hearing on the motion for summary judgment is not material to this case, because there is no indication or suggestion in the brief that a hearing would have brought forth any facts not apparent from the portions of the documentary record of the first trial which are in our record. We, of course, are justified in affirming a judgment if it is correct. The appellant must show not only error but also prejudice.

The judgment is correct because the plaintiff raised an issue before the trial court as to the liability of the Reorganized Church of Jesus Christ of Latter Day Saints on the construction contract. The contract-related claims against the church were resolved adversely to the plaintiff when the court ruled on the church's motion for directed verdict. When a plaintiff makes claims based on a particular transaction, and the case goes to trial, the plaintiff

---

**4.** As stated in *Abeles,* "ultimate facts," in contrast to "evidentiary facts", are those questions, points or matters of fact in issue essential to that decision and which were decided in support of the judgment. *Abeles v. Wurdack,* 285 S.W.2d at 548.

is obliged to set forth all claims and variations arising out of the transaction. All other claims against parties to the litigation which could have been stated in the petition are precluded. The claim as a third-party beneficiary was available at the time the trial began, and should be foreclosed by the adverse ruling on the motion for directed verdict.

I cannot explicitly find that the trial court ruled that the third-party beneficiary claim failed to state a claim, but the trial court was wholly justified in refusing to allow the belated amendment, because of his finding that the defendant church did not consent to the trial of an issue not pleaded. The plaintiff cannot, by an untimely request for leave to amend, avoid the preclusion of a claim arising out of the transaction which is the subject of the trial.

The holding that the plaintiff is precluded is consistent with *Rule 67.01*, which was amended in 1973 to limit the right of a plaintiff to dismiss a claim voluntarily. Before the amendment the plaintiff could dismiss all or any part of a claim prior to the time the case was submitted to the jury. By the amendment, dismissal after the introduction of evidence requires leave of court, which the plaintiff did not seek in this case. The plaintiff's counsel's statement before the introduction of evidence that he was going to dismiss the tort claims cannot be taken as a voluntary dismissal of Count I. The plaintiff should not be allowed to bring the contract between the church and the general contractor into litigation, seek relief from the church related to that contract, and then preserve a separate claim against the church relating to the contract, simply by labeling it a tort claim.

I doubt that the third-party beneficiary claim was legally sufficient. Of course, if it did not state a claim, there was no error in denying leave to amend. But there is no need to reach this point.

I agree that the judgment must be affirmed.