_____

No. 95-1235EM

_____

Cynthia J. McNeill, formerly        *
known as Cynthia J. Franke,         *
                                    *
            Appellant,              *
                                    *
      v.                            *
                                    *
William E. Franke, doing            *
business as Gannon Partnership      *
19, L.P.; Gannon Partnership        *
19, L.P.; Kevin W. Kelly;           *
Pentad Properties, Inc.             *
formerly known as Kemmons           *
Wilson Properties, Inc., doing      *
business as St. Louis Associates*   Appeal from the United States
Limited Partnership, formerly       *   District Court for the Eastern
known as St. Louis Associates,      *   District of Missouri.
Ltd.; St. Louis Associates          *
Limited Partnership, formerly       *
known as St. Louis Associates,      *
Ltd.; Phillip J. Paster;            *
Department of Housing and           *
Urban Development, agent Jack       *
Kemp; West Pointe Limited           *
Partnership; Northwest Village      *
Limited Partnership; Grandview      *
Hills Limited Partnership; Park     *
Ridge Apartments Limited            *
Partnership; Lamplite Limited       *
Partnership,                        *
                                    *
            Appellees.              *

                        _____

            Submitted:  December 11, 1995

               Filed:  May 29, 1996
                        _____

Before FAGG, HEANEY, and WOLLMAN, Circuit Judges.
                        _____

FAGG, Circuit Judge.


      Cynthia J. McNeill appeals the district court's dismissal of

her action for declaratory relief and judicial foreclosure, and the denial of her motion for summary judgment.  We reverse the dismissal and remand for further proceedings.

This case involves a $57.3 million promissory note and deed of trust allocated between McNeill and her former spouse, William E. Franke, in a February 1988 Missouri divorce decree.  The note was on the sale of five apartment complexes to St. Louis Associates, Ltd. (SLA).  A deed of trust on the apartments secured the note's repayment.  In turn, Franke and McNeill owed almost $40 million on an insurance company loan and industrial bonds.  The divorce decree awarded McNeill a 20% undivided ownership interest in the note as a tenant in common with Franke.  W.E.F. v. C.J.F., 793 S.W.2d 446, 459 (Mo. Ct. App. 1990).  The decree stated McNeill's interest extended to all rights of ownership in the apartments in the case of foreclosure.  Thus, McNeill's 20% interest included the security provided by the deed of trust.  The decree ordered the parties to divide receipts of principal and interest on the note in proportion to their percentage interests, after making payments on the underlying debt.  Because on its face the note was payable only to Franke, the decree ordered Franke to pay McNeill 20% of the net principal and interest payments received each month.  The divorce decree prohibited Franke and McNeill from changing the note's terms and conditions, including the provisions about the amount, terms, and method of payment, without each other's written consent.  McNeill filed a notice with the appropriate deed recorder to warn all persons of her ownership interests in the note, deed of trust, and apartment complexes.

Despite the divorce decree's terms, Franke never paid McNeill any part of the monthly note receipts.  In addition, between November 1988 and February 1989, Franke refinanced all indebtedness on the property without McNeill's consent. As part of the refinancing transactions, record title to the apartments was transferred from SLA to five limited partnerships, for which SLA

-2-

was the sole limited partner.  The partnerships obtained a new loan from a predecessor in interest to the Department of Housing and Urban Development (HUD), and the underlying debt was paid off.  Franke signed deeds of release stating the apartment complexes no longer secured the note's repayment, and deeds of trust on the apartment complexes were given to HUD's predecessor to secure the new loan.  As part of the refinancing, Gannon Management Company of Missouri, a company owned by Franke, was awarded a twenty-year contract to manage the apartment complexes.

To enforce Franke's payment obligation under the divorce decree, McNeill sued Franke for contempt, and in February 1992, a state court held Franke wilfully violated the decree by failing to turn over McNeill's share of the note receipts and by refinancing the note without McNeill's consent. The court held Franke in contempt, but stated Franke could purge his contempt by paying McNeill her share of the receipts before refinancing, plus $20,000 a month until McNeill had received the value of her 20% interest in the note after refinancing, estimated by Franke at $2,472,838. Franke has failed to make all the required monthly payments.

The five limited partnerships that bought the apartment complexes from SLA filed for voluntary bankruptcy.  Franke proposed a reorganization plan that was eventually accepted and confirmed by the bankruptcy court in June 1992.  As a result, Gannon Partnership 19, L.P. (GP19), a Missouri limited partnership in which Franke is the sole general partner, was given title to the apartments.

In October 1992, McNeill brought this action against the parties with claims to the apartment complexes: the current titleholder of the apartment complexes, GP19; the sole general partner of GP19, William Franke; the former titleholders, SLA, West Pointe Limited Partnership, Northwest Village Limited Partnership, Grandview Hills Limited Partnership, Park Ridge Apartments Limited Partnership, and Lamplite Limited Partnership; the two general

partners of SLA and the limited partnerships, Kevin W. Kelly and Pentad Properties, Inc.; the trustee under the deed of trust, Phillip J. Paster; and the current lienholder, HUD.  See 28 U.S.C. § 2410(a) (1994) (providing federal jurisdiction over actions affecting property on which the United States has a lien).  McNeill seeks a declaratory judgment that the appellees' claims to the property are subordinate to her rights, title, and interests under the note and deed of trust.  McNeill also seeks judicial foreclosure on the property to collect her 20% share of the balance due on the note, as if the refinancing transactions had not occurred.  The district court concluded McNeill was seeking to relitigate claims decided in the contempt proceeding, and thus dismissed the action as res judicata. At the same time, the district court denied McNeill's summary judgment motion as moot.

On appeal, McNeill asserts neither res judicata nor collateral estoppel bars this lawsuit.  We must give the same preclusive effect to the Missouri contempt judgment that a Missouri court would give the judgment. 28 U.S.C. § 1738 (1994); Kremer v. Chemical Constr. Corp., 456 U.S. 461, 466 (1982).  Under Missouri law, res judicata, also known as claim preclusion, bars the same parties from relitigating the same cause of action.  Oates v. Safeco Ins. Co. of Am., 583 S.W.2d 713, 719 (Mo. 1979); Curnutt v. Scott Melvin Transp. Inc., 903 S.W.2d 184, 191 (Mo. Ct. App. 1995).  The doctrine applies when four things are the same in both lawsuits:  the subject matter, the cause of action, the parties, and the status in which the defendant is sued.  King Gen. Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints, 821 S.W.2d 495, 501 (Mo. 1991); Barkley v. Carter County State Bank, 791 S.W.2d 906, 910 & n.4 (Mo. Ct. App. 1990).  When two lawsuits present the same cause of action, res judicata precludes consideration of matters that were actually decided and matters that could properly have been raised and decided in the earlier lawsuit.  Curnutt, 903 S.W.2d at 191; see King, 821 S.W.2d at 501. Collateral estoppel, also known as issue preclusion,

-4-

prevents a party from relitigating the same precise issue. <u>Oates</u>, 583 S.W.2d at 719; <u>King</u>, 821 S.W.2d at 500.

We conclude res judicata does not preclude litigation of this lawsuit. First, the contempt lawsuit did not present the same cause of action as this lawsuit. Although the refinancing transactions are a common fact in both lawsuits, the suits do not "arise out of the same act, contract or transaction" or require the same "parties, subject matter and evidence" to sustain the claims. <u>King</u>, 821 S.W.2d at 501. The contempt lawsuit was an action to enforce the divorce decree against McNeill's former husband, and this lawsuit is an action to enforce the note and deed of trust against later lienholders and titleholders. The issue in the contempt lawsuit was whether Franke's refinancing transactions wilfully violated the language of the divorce decree, and the issue in this lawsuit is the legal effect of the refinancing transactions on McNeill's property rights, which depends on a tenant in common's ability to convey property interests without the consent of a cotenant under state property law. Contrary to the appellees' assertion, McNeill does not merely seek to relitigate the value of her interest in the deed of trust, but instead asks the court to decide the legal status of her security interest in the apartments, and the priority of her interest versus the interests of the later titleholders and lienholders.

We reject the appellees' assertion that the contempt court decided McNeill's interest in the deed of trust was legally released as a lien and is no longer enforceable. The contempt order did not alter McNeill's ownership interest received in the divorce decree. Instead, the contempt court simply stated that by executing the deeds of release, Franke allowed the refinancing to occur and thereby violated the divorce decree's terms. The divorce decree established McNeill's ownership interest, McNeill recorded her interest with the deed recorder, and the Missouri Court of Appeals affirmed the award of her ownership interest. In affirming

the award, the Missouri Court of Appeals noted the divorce decree created a tenancy in common ownership, which could not be alienated by either party's sole action. W.E.F. v. C.J.F., 793 S.W.2d at 459. Thus, neither the contempt order nor Franke's attempt to convey the apartments without McNeill's consent displaced McNeill's ownership interest.

Second, the contempt lawsuit did not involve most of this lawsuit's defendants, who are necessary parties to the property issues, and the only common defendant, Franke, is not sued in the same capacity in both lawsuits. In the contempt proceeding, McNeill sued Franke individually as a party to the divorce judgment. In this lawsuit, Franke is sued only as the sole general partner of the apartment complexes' current owner, GP19. Because at least two res judicata requirements are not satisfied, the doctrine does not bar this lawsuit. Barkley, 791 S.W.2d at 910, 913.

As for collateral estoppel, the doctrine is inapplicable because the issues in this lawsuit are not identical to the issues decided in the contempt proceeding. Oates, 583 S.W.2d at 719.

McNeill also contends the district court should have granted her motion for summary judgment because the appellees' response to her motion was inadequate. The appellees filed a motion to stay consideration of summary judgment pending discovery, however, and the district court denied the summary judgment as moot because of the dismissal. Having reversed the dismissal that mooted McNeill's summary judgment motion, we leave McNeill's summary judgment motion to the district court's consideration on remand.

We thus reverse and remand for further proceedings.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.