**In the Interest of D.C.C.**

**No. WD 54259.**

Missouri Court of Appeals, Western District.

June 9, 1998.

Motion for Rehearing and/or Transfer to Supreme Court July 28, 1998.

Michael Taylor, St. Joseph, for Appellant.

Hugh Kranitz, St. Joseph, for Respondent.

SPINDEN, Judge.

For the second time, this court reviews the circuit court's determination that the biological parents of D.C.C.—born more than two years ago—cannot revoke their consent for the child's adoption by a couple who has had physical custody of him since several days

after his birth.[1] We remand for consideration of the biological parents' contentions that their consent for adoption was obtained by fraud and misrepresentation.

On December 10, 1995, C.C.W., not married, gave birth to D.C.C. The child's father was C.T.C. Two days later, on the advise of an attorney whose services were being paid for by the prospective adoptive parents, C.C.W. and C.T.C. consented to the adoption of their son by a married couple residing in Pennsylvania. C.C.W. and C.T.C. have since married and have given birth to another child.[2]

Beginning on December 15, 1995, five days after D.C.C. was born, the biological parents allege that they began communicating their desire to withdraw consent for the adoption to the attorney, to the prospective adoptive parents, and to the guardian *ad litem*. On December 19, 1995, the circuit court learned, through a report by the guardian *ad litem*, of C.C.W.'s desire to withdraw her consent but, after a brief hearing, it ordered transfer of D.C.C.'s custody to the prospective adoptive parents anyway and granted them permission to return to Pennsylvania with the child pending completion of adoption proceedings. At the hearing, the guardian *ad litem* told the circuit court that C.C.W. had telephoned him, apparently unaware that he was the guardian *ad litem*, and asked whether he would represent her in her attempts to revoke her consent to the adoption. He informed her that he could not.

On January 8, 1996, the biological parents filed a motion with the circuit court asking for leave to withdraw their consent for the adoption. They did not allege any factual basis for their request except to say that it was supported by C.C.W.'s and C.T.C.'s affidavits which were attached. The affidavits averred:

[O]n the 15th day of December, 1995, [we] advised [the prospective adoptive parents] that [we] no longer agreed with the adoption and wanted the minor child . . . to remain with [us].

[The prospective adoptive parents] refused to allow [us] to see the minor child . . . after the 15th day of December, 1995.

. . . .

[We wish] to withdraw [our] consent to [the] adoption and [want our] minor child . . . returned to [our] care, custody and control.

On January 11, 1996, the circuit court convened a hearing on the motion, and, without receiving any evidence, denied it. The biological parents appealed to this court. On October 15, 1996, we affirmed the circuit court's judgment on the ground that the biological parents had not averred any valid basis for revoking their consent.

On December 10, 1996, the biological parents filed a new motion asking the circuit court for leave to withdraw their consent or to set aside its order to transfer D.C.C.'s custody to the prospective adoptive parents. The grounds they alleged were fraud, misrepresentation, duress, violation of the Indian Child Welfare Act, 25 U.S.C. § 1901 *et seq.*,[3] and other violations of Missouri's adoption code. On February 18, 1997, the prospective adoptive parents asked the circuit court to dismiss the motion on grounds of *res judicata* and collateral estoppel. On March 24, 1997, the circuit court granted, without considering any evidence, the prospective adoptive parents' motion to dismiss. The circuit court announced that it was dismissing the biological parents' motion on the basis of collateral estoppel. The next day, the circuit court issued a judgment which did not

1. Our previous decision is *In re D.C.C.*, 935 S.W.2d 657 (Mo.App.1996).

2. The record does not indicate when they married, but it apparently was before April 24, 1997, the day on which they filed a petition identifying themselves as husband and wife.

3. This act says that a parent's consent for adoption of an Indian child given within 10 days of the child's birth is invalid. 25 U.S.C. § 1913(a).

The act defines an Indian child as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]" 25 U.S.C. § 1903(4). When an adoption is finalized in Missouri, § 453.080.1(7), RSMo Supp.1997, requires the courts to determine whether the parties have complied with this statute.

specify the ground on which it dismissed the motion. The biological parents appeal.

■ Circuit courts "have broad discretion in deciding whether to grant a motion to set aside a final judgment." *Cotleur v. Danziger,* 870 S.W.2d 234, 238 (Mo. banc 1994).

■ The first ground averred by the biological parents in asking the circuit court to set aside its judgment was that their consent "was not actual" because they gave it "indirectly or directly ... by duress by force of circumstances[.]" They contended that C.C.W. was immature emotionally, was suffering "deep and severe humiliation," and feared "scandal, shame and unhappiness" that might befall her and her son. They asserted that C.C.W.'s financial future was insecure and that C.T.C. was reluctant to keep the child because he perceived that his family would be opposed. The record belied this claim.

During the very first hearing in which the circuit court was to decide whether to allow transfer of custody, C.C.W. and C.T.C. told the circuit court that they had considered the adoption for several months by discussing it extensively with each other, family members, and a counselor. They told the court that they had reviewed the consent forms and agreed with the representations made and that they desired to have their child adopted by the adoptive parents. They assured the court that they were acting voluntarily without coercion and that they believed that adoption was in their child's best interest. In light of these statements under oath, the circuit court did not abuse its discretion in rejecting, on its face, their motion to set aside the judgment on the ground of duress by force of circumstances.

■ The biological parents also contended that the circuit court should have set aside its judgment because of alleged violations of the Indian Child Welfare Act, 25 U.S.C. § 1901 *et seq.* Again, the record belied the contention.

The United States Supreme Court has recognized that the act's purpose is to avoid removing Native American children "from their cultural setting" and thereby threatening "a long-term tribal survival" and the social and psychological well-being of the child. *Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 50, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989). This court concluded from *Holyfield* and other cases that the act "is not applicable where an Indian child is not being removed from an Indian cultural setting, where the natural parents have no substantive ties to a specific tribe, and where neither of the parents nor their families have resided or plan to reside within a tribal reservation." *C.E.H. v. L.M.W.,* 837 S.W.2d 947, 952 (Mo.App.1992) (*citing In re Adoption of Crews,* 118 Wash.2d 561, 825 P.2d 305, 310 (1992)). Neither C.C.W. nor C.T.C. contend that their situation satisfies these requisite facts. The circuit court did not abuse its discretion in rejecting their motion on this ground.

■ C.C.W.'s and C.T.C.'s third contention of fraud and misrepresentation is different in that the record did not provide a basis for a summary dismissal. C.C.W. and C.T.C. averred that the prospective adoptive parents and the attorney hired by the adoptive parents to represent C.C.W. and C.T.C. falsely assured them many times "that at any time prior to the final adoption hearing, [they] could withdraw their consent without objection of the [prospective adoptive parents] and that the minor child would be promptly returned to [their] physical possession and custody." They also alleged that the prospective adoptive parents falsely promised them that they "would be allowed to be an intricate part of the minor child's life[.]" C.C.W. and C.T.C. averred that these promises were false when made and that the prospective adoptive parents knew they were false and intended for C.C.W. and C.T.C. to rely on the promises in deciding to consent to the adoption.

■ Nothing in the record contradicts these allegations. If proven, fraud and misrepresentation are proper bases for setting aside a judgment. Rule 74.06(b). The circuit court, as best as we can determine, rejected C.C.W.'s and C.T.C.'s motion, on its face, without hearing any evidence. We deem rejection of the allegations without

benefit of hearing any evidence to be an abuse of discretion.

The prospective adoptive parents argued to the circuit court and to us that collateral estoppel or *res judicata* barred the circuit court from granting C.C.W.'s and C.T.C.'s motion. We disagree.

In our previous opinion, we said that "[a] circuit court may allow withdrawal of consent to adopt for good cause, and the natural parents bear the burden of proving good cause[,]" but because the biological parents did not allege any grounds for granting their motion, we affirmed the circuit court's judgment. 935 S.W.2d at 659. When the biological parents filed their second motion for leave to withdraw their consent, they averred fraud and misrepresentation which, if true and if not overcome by other considerations such as the child's best interest, would accord them relief. In considering their motion, however, the circuit court directed the parties to address only the applicability of *res judicata* and collateral estoppel. It refused to hear any evidence. To the extent that the circuit court's judgment rested on collateral estoppel or *res judicata*, the circuit court was mistaken.

 Collateral estoppel proscribes a court's consideration of an issue of ultimate fact which has been determined by a valid judgment in litigation between the same parties. *King General Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints*, 821 S.W.2d 495, 500 (Mo. banc 1991). A significant consideration in deciding whether to apply the doctrine of collateral estoppel "is whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior lawsuit." *Id.* Collateral estoppel precludes only those issues which were "necessarily and unambiguously decided" but not those issues which the parties had an opportunity to litigate but did not. *Id.* at 501. *Res judicata* involves the preclusion of claims and "applies not only to points and issues upon which the court was required by the pleadings and proof to form an opinion and pronounce judgment, but to every point properly belonging to the subject matter of litigation and which the parties, exercising reasonable diligence, might have brought forward at the time." *Id.* "The doctrine of res judicata precludes parties from contesting matters that the parties have had a full and fair opportunity to litigate." *State ex rel. Trotter v. Cirtin*, 941 S.W.2d 498, 500 (Mo. banc 1997).

The circuit court did not resolve the issues of fraud and misrepresentation averred in the biological parents' petition. C.C.W.'s and C.T.C.'s first motion did not raise any grounds for setting aside the circuit court's judgment, and the circuit court specifically precluded consideration of *any* issues of merit. It limited its hearing on the first motion to "[trying] to find out where we're going to go" and informed the parties, "We're not going to go into the merits[.]" We affirmed the circuit court's denial of their first motion because the biological parents had not averred a proper basis for withdrawing their consent. When the biological parents reappeared before the circuit court with their request to withdraw their consent, they averred reasons valid on their face. The prospective adoptive parents contended that the issue of their withdrawal of consent had already been litigated. This was not so; the circuit court had not adjudicated any substantive issue of merit.

The biological parents have not had a "full and fair opportunity" to litigate the issues they raise. Neither *res judicata* nor collateral estoppel were proper grounds for dismissing the biological parents' motion to revoke consent to adoption on the averred grounds of fraud and misrepresentation.

 We, therefore, remand this case for the circuit court to afford the biological parents a hearing on their allegations of fraud and misrepresentation. We do so fully mindful that a young child's well-being is at risk. Custody decisions are perhaps the most difficult a court can make and exacerbating an already perplexing situation is this child's having been in the prospective adoptive parents' custody for all but a few days of his life. We are acutely aware of the potential trauma a change of custody might cause D.C.C., but we are confident that the circuit court, in

exercising its discretion, will be diligent in considering D.C.C.'s best interest.

Indeed, in any proceeding such as this:

It must be remembered that the ultimate purpose ... is the welfare of the child, and the wishes and wants of the natural parents and also of the proposed adoptive parents can be considered as only secondary to this ultimate purpose.

. . . .

We think also that the welfare of the child should be considered on such inquiry [into whether revocation of consent should be permitted], but only in and limited to the question as to whether or not [the child] will be materially affected by the change of condition wrought by the discontinuance of the existing situation.

*In Re Adoption of McKinzie,* 275 S.W.2d 365, 372–73 (Mo.App.1955). The Supreme Court, in *In re Baby Girl,* 850 S.W.2d 64, 70 (Mo.banc 1993), ordered a circuit court to consider a natural mother's attempt to revoke consent to an adoption of her new born child, and it instructed the circuit court to "exercise its best judgment as to whether the best interest of this baby girl will be served by allowing her to remain with [the prospective adoptive parents], by returning her to [her natural parents], or by some other disposition.

We, therefore, remand the case for consideration of evidence that C.C.W. and C.T.C. have in support of their allegations of fraud and misrepresentation and for determination of whether those allegations, if proven, are proper grounds for setting aside the circuit court's judgment in consideration of D.C.C.'s best interests.

BRECKENRIDGE, P.J., and LOWENSTEIN, J., concur.