**In the Interest of C.K. and J.K., Jr.**

**No. WD 67474.**

Missouri Court of Appeals,
Western District.

May 9, 2007.

Marcos Antonio Barbosa, Kansas City, for Appellant.

Gerald McGonagle, Kansas City, Gary Lee Gardner, Office of Attorney General, Jefferson City; Anastacia Renae Adamson, Kansas City, for Respondent.

PAUL M. SPINDEN, Presiding Judge.

M.T. appeals the circuit court's judgment terminating her right to parent her children, C.K. and J.K., Jr.,[1] and granting

---

1. The court also terminated the parental rights of J.K., the children's father, but J.K. did not appeal the circuit court's judgment.

M.E.H.'s and D.H.'s petition to adopt the children. M.T. contends that the circuit court[2] did not make specific findings on each of the factors outlined in Section 211.447.4(2) and (3), RSMo 2000, in terminating her parental rights and did not make sufficient findings regarding the best interests of the children under Section 211.447.6. She also asserts that the circuit court erred by not ascertaining whether the Indian Child Welfare Act had been complied with and in relying solely on her past behavior to justify termination of her parental rights. We reverse the circuit court's judgment and remand.

■■■ The circuit court is required to make findings of fact concerning each of the factors specified in Section 211.447.4(2) or (3) or state why a given factor is not relevant before terminating a person's parental rights under these statutes.[3] *In the Interest of J.M.N.*, 134 S.W.3d 58, 65 (Mo. App.2004); *In the Interest of C.N.G.*, 89 S.W.3d 564, 567 (Mo.App.2002); *In the Interest of Q.M.B.*, 85 S.W.3d 654, 658–59

(Mo.App.2002). To preserve the issue for our review, however, a party must challenge the circuit court's failure to make statutorily required findings in a motion to amend the judgment. Rule 78.07(c).

■■ Rule 78.07(c) says, "In all cases, allegations of error relating to the form or language of the judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review." "The failure of the court to make [statutorily required] findings is error; however, the claimed error is not preserved unless a motion to alter or amend the judgment is filed which specifically challenges the failure to make statutorily mandated findings." *In the Interest of Holland*, 203 S.W.3d 295, 302 (Mo.App. 2006). M.T. does not assert, and the circuit court's docket sheet does not reflect, that M.T. filed a motion to amend the judgment. M.T. "was obligated to put the [circuit] court on notice that it failed to

---

2. The circuit court adopted the findings and recommendations of Commissioner Molly Merrigan as its judgment in this case.

3. *The circuit court did not consider or make specific findings regarding Section 211.447.4(2)(a), (c) and (d) or Section 211.447.4(3)(b) and (c). Moreover, the circuit court's findings as to Section 211.447.4(2)(b) and Section 211.447.4(3)(a) and (d) were inadequate. In regard to Section 211.447.4(2)(b), although the circuit court found that M.T. used drugs, it failed to make findings addressing M.T.'s "drug dependency" and how the drug usage prevented her from providing the necessary care, custody, and control of the children. See In the Interest of H.F.G., 196 S.W.3d 45, 49 (Mo.App. 2005). In regard to Section 211.447.4(3) the circuit court did not make findings setting forth which conditions led to the assumption of jurisdiction and which of these conditions still remained at the time of trial. In the Interest of T.A.S., 32 S.W.3d 804, 812 (Mo. App.2000). Moreover the circuit court did not did not identify the social service plan or*

the terms of the plan as required by Section 211.447.4(3)(a). Although the circuit court is not required to quote verbatim the terms of the plan in its judgment, it must make findings that sufficiently identify the plan and the terms with which the parent did not comply. *In the Interest of A.A.R.*, 39 S.W.3d 847, 852 *(Mo.App.2001). The circuit court made general findings about M.T.'s failure to complete drug treatment programs, her testing positive for drugs, her sporadic visitations with the children, and her failure to participate in individual counseling. The circuit court, however, did not sufficiently identify the terms of the social service plan with which M.T. did not comply. Further, although the circuit court made numerous findings about M.T.'s using drugs and about her failure to complete any drug treatment programs, the circuit court did not make findings addressing M.T.'s "drug dependency" and how the drug usage prevented her from providing the necessary care, custody, and control of the children as required by Section 211.447.4(3)(d). H.F.G., 196 S.W.3d at 49.*

make specific statutorily required findings. Absent such specificity, the error is not preserved for appeal." *Id.*

The same is true concerning M.T.'s contention that the circuit court did not make sufficient findings regarding the best interests of the children under Section 211.447.6. Rule 78.07(c) required M.T. to file a motion to amend the judgment, alleging that the circuit court's findings were insufficient to preserve this issue for our review.

M.T. also asserts that the circuit court erred by not ascertaining whether or not the proceedings complied with the Indian Child Welfare Act. In her answer to the petition to terminate her parental rights, M.T. asserted, "[I state] that some or all of the Petitioners' claims are limited or barred by the applicable provisions of the Indian Child Welfare Act. ... [I state] that this Court lacks subject matter and/or personal jurisdiction pursuant to applicable provisions of the Indian Child Welfare Act." M.T. contends that the Indian Child Welfare Act required the circuit court to notify the children's Indian tribe by registered mail with return receipt requested of the pending process and of their right to intervene.

■ Indeed, 25 U.S.C.A. 1912(a) says:

In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe by registered mail with return receipt requested, of the pending proceedings and of their right to intervention.

Moreover, in an adoption proceeding, Section 453.080.1(6), RSMo Supp.2006, requires the circuit court to conduct a hearing to determine whether or not it should finalize the adoption and to ascertain whether or not the requirements of the Indian Child Welfare Act have been satisfied. *In the Matter of C.G.L.,* 28 S.W.3d 502, 505 (Mo.App.2000).

■ M.T., however, did not establish that the Indian Child Welfare Act is applicable to this case. The United States Supreme Court has recognized that the act's purpose is to avoid removing Native American children "from their cultural setting," thereby threatening "a long-term tribal survival" and the social and psychological well-being of the child. *Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 50, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989). This court concluded from *Holyfield* and other cases that the act "is not applicable where an Indian child is not being removed from an Indian cultural setting, where the natural parents have no substantive ties to a specific tribe, and where neither of the parents nor their families have resided or plan to reside within a tribal reservation." *In the Matter of C.E.H.,* 837 S.W.2d 947, 952 (Mo.App. 1992) (citing *In the Matter of the Adoption of Crews,* 118 Wash.2d 561, 825 P.2d 305, 310 (1992)); *see also In the Interest of T.C.T.,* 165 S.W.3d 529, 533 (Mo.App.2005), and *In the Interest of D.C.C.,* 971 S.W.2d 843, 846 (Mo.App.1998). M.T. does not contend that this case satisfies these requisite facts. Indeed, in its judgment, the circuit court found that M.T. did not produce "documentary evidence to show that she is now or in the past was ever a registered member of an American Indian Tribe." Hence, M.T.'s contention is without merit.

■ M.T. also asserts that clear, cogent, and convincing evidence did not support the circuit court's determination to terminate her parental rights because the circuit court relied solely on her past behav-

ior to justify its determination. We agree that the circuit court erred in relying solely on M.T.'s past behavior to justify the termination.

■ In a termination proceeding, the circuit court, before considering the child's best interest, must determine whether or not the grounds for termination are supported by clear, cogent, and convincing evidence. Evidence supporting termination is clear, cogent, and convincing if, when weighed against all of the evidence, it instantly tilts the scales in favor of termination. We review the circuit court's judgment by determining whether or not it is supported by substantial evidence, is consistent with the weight of evidence, or accurately declares and applies the law. *In the Interest of D.C.S.*, 99 S.W.3d 534, 538 (Mo.App.2003), *abrogated on other grounds by In the Interest of M.D.R.*, 124 S.W.3d 469 (Mo. banc 2004). We review termination of parental rights cases closely because termination of parental rights interferes with a basic liberty, freedom from governmental interference with family and child rearing. *In the Interest of P.C.*, 62 S.W.3d 600, 603 (Mo.App.2001). " 'Terminating parental rights is an exercise of an awesome power and should not be done lightly.' " *Id.* at 602–03 (quoting *In the Interest of T.H.*, 980 S.W.2d 608, 613 (Mo. App.1998)).

The circuit court terminated M.T.'s parental rights pursuant to Section 211.447.4(2) and (3), RSMo 2000. In terminating M.T.'s parental rights pursuant to Section 211.447.4(2), the circuit court said, "Pursuant to Section 211.447.4(2)(b), both the natural parents have a chemical dependency which prevents them from consistently providing the necessary care, custody and control of the children[ and which] cannot be treated so as to enable the parents to consistently provide such

care, custody and control." Concerning Section 211.447.4(3), the circuit court said:

[T]he children have been under the jurisdiction of the Juvenile Court for a period in excess of one year and the conditions which led to the assumption of jurisdiction still persist and there is little likelihood that these conditions will be remedied at an early date so that the children can return to the parents in the near future and the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home.

In that:

a. The parents have made little or no progress in complying with terms of social service plans provided to them to help address and rectify the conditions that originally brought the children into care.

b. The parents did not complete any substance abuse program either inpatient or outpatient;

c. The parents provided random UA's that were positive;

d. The parents were sporadic in visitation with their children;

e. The parents were discharged from individual counseling for failure to participate[.]

Pursuant to RSMo 211.447.4(3)(d) the parents have a chemical dependency which prevents them from consistently providing the necessary care, custody and control over the children, which cannot be treated so as to enable the parent to consistently provide such care, custody and control.

■ The evidence established that, during June 2003, the circuit court assumed jurisdiction over the children because J.K., Jr., who was five years of age and who shot himself in the neck after being left

unattended with access to a loaded gun. Investigating police officers found that the children were residing with their parents in a hotel room that was dirty with trash and cat feces. Authorities removed the children from their parents' custody and placed them in foster care. M.T. pleaded guilty to endangering the welfare of a child on April 15, 2004.[4]

When authorities placed the children in foster care, they identified barriers to reunifying M.T. and her children: substance abuse, lack of a stable living situation, and poor hygiene. To facilitate reunification, authorities offered M.T. services, including substance abuse assessments and treatment, parent aid supervised visitations, therapeutically supervised visitations, individual therapy, couples therapy, and random urinalysis tests.

The evidence established that M.T. did not remain drug free. She tested positive for methamphetamines during September 2003 and November 2003. She did not participate in any substance abuse treatment programs. She did not participate in individual or couples therapy consistently before January 2005. Between June 2003 and September 2003, M.T. had 11 scheduled supervised visits with her children but attended only seven of them.[5] This evidence was what the circuit court relied on to terminate M.T.'s parental rights.

After January 2005, M.T. began participating in individual counseling with Karen Allen, a licensed clinical social worker. According to Allen, she met weekly with M.T. for a period before reducing the visits' frequency to twice a month and eventually once a month. Concerning M.T.'s progress, Allen testified:

> [M.T.] is functioning in a stable manner at this point. She lives independently. She has a job. She's never had a positive drug screen since she's come back [to counseling] that I'm aware of. She's been consistently involved in counseling. She herself is—is doing well. ... She does appear to be stable at this time.
>
> ....
>
> Considering only her stability and her ability to be appropriate and visit, and to not present a risk during the visits to the children, I would say she—she could be appropriate and she wouldn't present a physical risk to them.

**4.** The adoptive parents assert that, because M.T. pleaded guilty to endangering the welfare of a child, which was a Class D felony under Section 568.045, RSMo Supp.2002, clear, cogent, and convincing evidence existed for terminating M.T.'s parental rights pursuant to Section 211.447.4(4). That subsection provides parental rights may be terminated if "[t]he parent has been found guilty or pled guilty to a felony violation of chapter 566, RSMo, when the child or any child in the family was a victim, or a violation of section 568.020, RSMo, when the child or any child in the family was a victim." This section permits a court to terminate a person's parental rights when the evidence establishes that the parent has been found guilty or pled guilty to a sexual offense or incest involving a child in the family. Such an offense is not involved in this case. Moreover, the petition under which the adoptive parents sought termination of M.T.'s parental rights did not allege Section 211.447.4(4) as a ground for termination. " 'Due process demands that "[t]he petition in a termination of parental rights case should contain allegations likely to inform those persons involved of the charges, to the end that objection may be prepared." ' 'For this reason, we have previously recognized that it is necessary to terminate on a ground asserted in the [p]etition.' " *In the Matter of E.F.B.D.*, 138 S.W.3d 145, 150 (Mo. App.2004) (citations omitted). Further, the circuit court did not find that M.T.'s parental rights should be terminated pursuant to Section 211.447.4(4).

**5.** The circuit court discontinued M.T.'s visitation with her children during November 2003 because she tested positive for drugs. The last visit M.T. had with her children was during September 2003.

Moreover, the evidence established that, from July 2005 to July 2006, M.T. provided urinalysis samples every other week for an approximately 24 samples. She never tested positive for drugs during this time. Although some of the samples were questioned as diluted because of abnormal creatinine levels,[6] the circuit court ordered M.T. to have a hair test for drug testing. The results of the hair test were also negative and established that M.T.'s body had been free of drugs for at least 90 days. M.T. also testified that she had maintained employment, secured housing, and had divorced J.K.

■■■■ In terminating M.T.'s parental rights, the circuit court relied only on M.T.'s past acts and did not consider her current ability and willingness to parent. "[I]t is insufficient merely to point to past acts, note that they resulted in abuse or neglect and then terminate parental rights." *In the Interest of K.A.W.*, 133 S.W.3d 1, 9 (Mo. banc 2004). "Past behavior can support grounds for termination, but only if it is convincingly linked to predicted future behavior. There must be some *explicit consideration* of whether the past acts provide an indication of the likelihood of future harm." *Id.* at 9–10 (emphasis added and footnote omitted). As the Supreme Court recently held:

> A judgment terminating parental rights must be based upon more than past conditions. "Regardless of the past, [termination of parental rights] 'requires the trial court to determine that the parent is currently unfit . . . to be a party to the parent-child relationship.'"

While past behavior is one component of finding grounds for termination, the circuit court must also assess the extent to which past behavior is predictive of similar issues in the future. Findings supporting earlier determinations are not irrelevant, but such findings must be updated to address the parent's current ability and willingness to parent as well as the potential for future harm. There must be a prospective analysis with some explicit consideration of whether past behaviors indicate future harm.

*In the Interest of C.W.*, 211 S.W.3d 93, 98–99 (Mo. banc 2007) (citation omitted).

The circuit court did not address M.T.'s current ability and willingness to parent and did not explicitly consider the potential for future harm. In terminating M.T.'s parental rights pursuant to Section 211.447.4(2) and (3), RSMo 2000, the circuit court primarily relied on evidence obtained before 2004 concerning M.T.'s drug usage, her testing positive for methamphetamines, and her failures to comply with terms of social service plans. After January 2005, however, M.T. never tested positive for drugs although she underwent frequent tests. Because the circuit court suspected that some of the samples were diluted, it ordered M.T. to have a hair test, and the hair test revealed that M.T. had been drug free for at least 90 days. Moreover, although M.T. has not participated in a drug treatment program, she has consistently participated in individual counseling since January 2005.

---

**6.** In its findings of fact, the circuit court said, "Many of the UA's that [M.T.] submitted were dilute and in one she indicated that she was taking vinegar gelcaps which is frequently used in an attempt to adulterate urine." At a hearing on a motion to modify, the commissioner asked M.T. about the vinegar gelcaps, which she listed on the drug testing form asking her about her current medications. M.T. said it was for weight loss. The commissioner then opined, "It's also well known or at least, it's thought on the street, that if you take that sort of thing, you can mess with a urinalysis test, so it made me suspicious." This was the only evidence concerning the vinegar gelcaps.

Further, the circuit court did not consider whether or not any of M.T.'s past acts would result in future harm of the children. As the Supreme Court said in *K.A.W.*, "it is insufficient merely to point to past acts, note that they resulted in abuse or neglect and then terminate parental rights." 133 S.W.3d at 9. The circuit court was required explicitly to consider whether or not the past acts indicated a likelihood that M.T. would harm her children in the future. Indeed, as the *K.A.W.* court instructed:

> [A]buse or neglect sufficient to support termination under section 211.447.4(2) [must] be based on conduct at the time of termination, not just at the time jurisdiction was initially taken. Similarly, ... a failure to rectify sufficient to support termination under section 211.447.4(3) [must] be based on a determination that conditions of a potentially harmful nature continued to exist as of the termination, rather than a mere finding that conditions that led to the assumption of jurisdiction still persisted.... Findings supporting earlier determinations are not irrelevant, but they must be updated to address the extent to which they describe the time of the termination and the potential for future harm. To that end, a trial court cannot support a termination by merely incorporating earlier findings supporting its assumption of jurisdiction or some other earlier disposition.

*Id.* at 10 (citations omitted).

In light of *K.A.W.*, we cannot assume that the circuit court considered M.T.'s current ability and willingness to parent the children or that the circuit court explicitly considered the potential for future harm. We, therefore, reverse the circuit court's judgment terminating M.T.'s parental rights. In doing so, we do not mean to suggest that clear, cogent, and convincing evidence to terminate M.T.'s parental rights would not exist in this case. *K.A.W.* requires that we remand for the circuit court to consider all of M.T.'s conduct, both past and present, in determining whether or not clear, cogent, and convincing evidence exists to terminate M.T.'s parental rights pursuant to Section 211.447.4(2) and (3) and whether or not termination would be in the best interest of the children. Because we are remanding, the circuit court shall consider and make findings on each of the statutorily required subdivisions or factors for all grounds for termination of parental rights and shall evaluate and make findings on the applicable factors regarding the best interests of the children.

PATRICIA A. BRECKENRIDGE, Judge, and JAMES M. SMART, Jr., Judge, concur.