CITY OF WASHINGTON,
Missouri, Respondent,

v.

WARREN COUNTY, Missouri,
et al., Appellants.

No. 77541.

Supreme Court of Missouri,
En Banc.

May 30, 1995.

Jay L. Levitch, Henry F. Loepke, St. Louis, for appellants.

Mark C. Piontek, Gael D. Wood, Washington, for respondent.

David G. Beeson, Jackson, for amicus City of Perryville, et al.

LIMBAUGH, Judge.

Warren County appeals the trial court's entry of summary judgment in favor of the City of Washington on the City's claim that improvements to its airport, located in Warren County, were immune from Warren County's zoning ordinance. The Court of Appeals, Eastern District, reversed the trial court's decision, and thereafter, this Court granted transfer.[1] The trial court's entry of summary judgment is affirmed.

## I.

The City of Washington (the City), located in Franklin County, owns and operates the Washington Memorial Airport, located in Warren County (the County). In 1985, the County amended its zoning ordinance, which, in part, reclassified the airport property as part of a flood plain district. Pursuant to this classification, expansion of the airport would be prohibited. Subsequently, in 1988, the City filed with the County commissioners an application for rezoning along with an application for a conditional use permit to expand the airport's runway. The application for rezoning, however, was filed "under protest" as the City contended that any development of the airport property was immune from the County's zoning ordinance. The County agreed to rezone the airport property as a commercial and industrial development district and issued a conditional use permit for the runway expansion. The permit contained a clause stating: "[t]here will be no further expansion of the airport or any other improvements to the airport without the prior approval of the [county]...." In 1991, the City again applied for a conditional use permit as well as a development permit to construct an additional hanger on

---

1. An amicus brief was filed on behalf of the following entities: City of Perryville, City of Cape Girardeau, City of Marble Hill, City of Fredericktown, City of Monett, City of Kennett, City of Mount Vernon, City of Poplar Bluff, City of Chillicothe, City of Cameron, City of Windsor, City of Unionville, City of Kirksville, City of Albany, City of Bonne Terre and Missouri Municipal League.

the airport property. In response, the Warren County Commission issued a "zoning order" denying the application.

The City then filed a petition that sought, *inter alia*, a declaratory judgment that the airport property was exempt from the zoning order. In support of its petition, the City alleged that the zoning order infringed upon the City's power to condemn property outside its corporate boundaries for the construction and expansion of an airport. Thereafter, the City filed a motion for summary judgment. The trial court found that the City operated a regional airport for the benefit of the public and that construction of an additional hanger was necessary for the continued viability of the airport. Given these facts, and relying on *City of St. Louis v. City of Bridgeton*, 705 S.W.2d 524 (Mo. App.1986), the court held that the City was immune from the zoning order. This appeal followed.

## II.

■ As a threshold issue, the County contends that the City has no power to condemn the property in question. The relevant statutes empowering cities to condemn property for airports provide, in part, as follows:

305.170. The local legislative body of any city ... in this state is hereby authorized to acquire, by purchase or gift, establish, construct, own, control, lease, equip, improve, maintain, operate, and regulate, in whole or in part, ... airports or landing fields for the use of airplanes and other aircraft either within or without the limits of such cities ... and may use for such purpose or purposes any property suitable therefor that is now or may at any time hereafter be owned or controlled by such city, village or town.

305.190. Any lands acquired, owned, controlled or occupied by such cities ... for the purposes enumerated in sections 305.170 and 305.180 hereof shall and are hereby declared to be acquired, owned, controlled, and occupied for a public purpose and as a matter of public necessity, and such cities ... shall have the right to acquire property for such purpose or purposes under the power of eminent domain as and for a public necessity.

The County argues that the words "by purchase or gift" in § 305.170 are words of limitation—they are the exclusive means by which a city may acquire property for an airport outside its city limits. Furthermore, the County contends that the condemnation power authorized in § 305.190 is limited to condemnation of property within the city's borders. To adopt the County's position, however, would require this Court to construe each statute individually, without regard to the other. In fact, both sections relate to the same subject matter and were enacted in 1929 as part of the same bill. As such, they are *in pari materia* and, to arrive at the true legislative intent, they must be construed together. *State v. Knapp*, 843 S.W.2d 345, 347 (Mo. banc 1992).

■ Section 305.170 authorizes numerous actions with regard to airports: to acquire, by purchase or gift; to establish; to construct; to own; to control; to lease; to equip; to improve; to maintain; to operate; and to regulate. Furthermore, the statute authorizes cities to undertake any of these actions either within or without the city limits. Section 305.190, by express reference to § 305.170, declares that the acquisition, establishment, condemnation, etc. of airports is a public purpose and a public necessity. To accommodate that purpose, § 305.190 then authorizes cities to condemn property. Reading these statutes together, we hold that the legislature has authorized cities to construct airports outside their city boundaries and to condemn property for that construction. To suggest otherwise would render § 305.190 meaningless.

## III.

Having determined that the City has the power to condemn property outside its borders, we next address whether that power immunizes the City from the zoning laws of the County. In resolving claims of governmental immunity from zoning regulations, this Court has applied two tests: 1) the "power of eminent domain" test, *State ex rel. St. Louis Union Trust Co. v. Ferriss*, 304 S.W.2d 896 (Mo. banc 1957); *State ex rel.*

*Askew v. Kopp,* 330 S.W.2d 882 (Mo.1960); and *Appelbaum v. St. Louis County,* 451 S.W.2d 107 (Mo.1970); and 2) the "balancing of interests" test, *St. Louis County v. City of Manchester,* 360 S.W.2d 638 (Mo. banc 1962).

In *Ferriss,* the Ladue School District initiated condemnation proceedings to acquire property in the City of Ladue for purposes of constructing a school. The city sought a writ of prohibition to curtail the condemnation hearings, contending that a local zoning ordinance prohibited erection of a school at the proposed site. Applying the "power of eminent domain" test, this Court held that §§ 165.100 and 165.370, enacted pursuant to Art. IX, § 1(a), of the Missouri Constitution, vested overriding power in the school district to condemn property for public schools. Implicit in the holding is a finding that Ladue's zoning ordinance, enacted solely pursuant to chapter 89 and without any specific constitutional authority, could not restrict the school district's constitutionally-grounded power of eminent domain.

In *Kopp* this Court again applied the "power of eminent domain" test in review of Jackson County's decision to approve construction of a sewer treatment plant by the City of Raytown. The plant was to be located in an unincorporated area of the county, 2½ miles outside the city limits. The Court determined that §§ 71.680 and 79.300, the enabling statutes for Art. IV, § 37, of the Missouri Constitution, expressly authorized the city to condemn land within five miles outside its borders for construction of a sewer treatment plant. In the absence of a comparable constitutional source for Jackson County's zoning power to offset the city's condemnation power, the Court concluded that the county's zoning laws did not control.

Distinguishing *Ferriss* and *Kopp,* this Court held in the *Manchester* case that the construction of a sewer treatment plant by the City of Manchester in an unincorporated area of St. Louis County was subject to the county's zoning laws. In reaching this result, the Court applied a modified "balancing of interests" test, focusing on the nature of the use and the justification for locating that use in a residential district of the county. The court was not bound by *Ferriss* and

*Kopp* in that St. Louis County, unlike Ladue and Jackson County, is a special charter county, with zoning powers specifically authorized by Art. VI, § 18(c), of the Missouri Constitution.

The "power of eminent domain" test was applied once more in *Appelbaum v. St. Louis County,* 451 S.W.2d 107 (Mo.1970), in which the towns of St. Johns and Bel–Ridge sought to prevent St. Louis County from constructing an incinerator and land fill within their corporate boundaries. This Court, relying on *Ferriss,* held that the county was not subject to the municipalities' zoning laws. The Court distinguished *Manchester* by noting that St. Johns and Bel–Ridge's zoning ordinances, unlike those of St. Louis County, had no specific constitutional authorization.

▬ The common focus of these cases is on the source of the powers in conflict. Under the "power of eminent domain" test, if a power has its source in the constitution, although delegated by statute, then it prevails over and cannot be limited by another government entity's power, such as zoning, that is delegated solely by statute and without any specific constitutional authority. *City of Kirkwood v. City of Sunset Hills,* 589 S.W.2d 31, 42 (Mo.App.1979). Only where the zoning authority is likewise authorized by the constitution or authorized by a statute that implements clear constitutional authority will this court apply a "balancing of interests" test. *See City of St. Louis v. City of Bridgeton,* 705 S.W.2d 524 (Mo.App.1985) (applying a "balancing" test only after determining that Bridgeton, a constitutional charter city, had authority pursuant to Art. VI, § 19(a) to enact zoning laws).

▬ We note that the courts of several jurisdictions and a number of commentators criticize the "power of eminent domain" test because it wrongly assumes that zoning regulations limit the power to condemn land. *See City of Fargo v. Harwood Township,* 256 N.W.2d 694, 696 (N.D.1977) (criticizing *Kopp*); 3 Rathkopf, *The Law of Zoning and Planning,* § 53.05(b). These critics suggest that zoning statutes merely regulate the use of land, not the right to acquire it. We reject that position. To state that zoning regula-

tions do not limit the power of eminent domain ignores the fundamental principle of condemnation: that land can only be condemned for a public purpose. The power of eminent domain, in other words, refers not just to the power to acquire property, but the power to acquire property for a particular purpose. If a zoning regulation prohibits that particular public purpose or use, it limits the power to condemn altogether.

■ To resolve this case according to the principles reviewed above, we must ascertain the source of the City's authority to condemn property. That source is found in Art. I, §§ 26 and 27 of the Missouri Constitution, that state, in part, as follows:

> § 26. That private property shall not be taken or damaged for public use without just compensation.
>
> § 27. That in such manner and under such limitations as may be provided by law, the state, or any county or city may acquire by eminent domain such property, or rights in property, in excess of that actually to be occupied by the public improvement ...

Implicit in these provisions is the power to condemn in favor of the legislature. *State ex rel. Missouri Cities Water Co. v. Hodge,* 878 S.W.2d 819, 820 (Mo. banc 1994). To implement this constitutional authority, the legislature enacted §§ 305.170 and 305.190, thereby delegating to cities the power to condemn property for airports either within or without the city limits. In *Board of Regents for Northeast Missouri State Teachers College v. Palmer,* 356 Mo. 946, 204 S.W.2d 291, 293 (1947), this Court recognized that the legislative delegation of the power to condemn did not diminish the nature of the power delegated, stating:

> [T]he grant of the power [by the General Assembly] carries with it the right to decide the essentially political questions of necessity for its existence as well as the expediency and propriety of doing so.

*Palmer,* 356 Mo. 946, 204 S.W.2d 291, 294 (1947). As such, even though delegated by the state, the City's condemnation power carries with it the power's constitutional source. 29A C.J.S. *Eminent Domain* § 64.

■ The County concedes, on the other hand, that its zoning authority is derived solely from statutes set out in chapter 64. Indeed, neither party cites, nor could we find, any specific constitutional authority for the County's zoning power. Therefore, applying the "power of eminent domain" test, we hold that the City of Washington is immune from the County's zoning ordinances as they relate to the airport.

## IV.

■ In a separate point, the County maintains that the City, by agreeing to the 1988 conditional use permit, also agreed to seek County approval before further expanding the airport. This agreement, the County explains, estops the City from attacking the zoning order. It is well-established, however, that estoppel does not lie against governmental entities absent exceptional circumstances. *O'Connell v. School District of Springfield,* 830 S.W.2d 410, 417 (Mo. banc 1992). Nevertheless, the County submits that the policy behind the rule prohibiting estoppel against governmental entities does not apply where, as here, the party asserting the estoppel is also a governmental entity. Although this is an intriguing argument, we need not address it in this case because the County is unable to establish grounds for estoppel in the first place.

■ As this Court stated in *O'Connell,* estoppel requires, among other elements, "an admission, statement or act inconsistent with the claims afterward asserted and sued upon." *Id.* at 417. In the case at hand, the City filed its rezoning application in 1988 "under protest," claiming that it was immune from all County zoning regulations pertaining to its airport. The protest of the zoning regulations was necessarily a protest of the conditional use permit because the conditional use permit was dependent on the propriety of the zoning regulations. Consequently, the "protest" qualified any admission or inconsistency in the conditional use permit, and preserved the City's challenge to the zoning order. In this situation, the doctrine of estoppel does not apply.

## V.

■ Finally, the County contends that the trial court did not apply the "power of eminent domain" test, but rather applied the "balancing of interests" test to decide the case, and that the evidence was insufficient to support the trial court's finding under that test. An order of summary judgment will not be set aside on review if supportable on any theory. *Zafft v. Eli Lilly & Co.,* 676 S.W.2d 241, 243 (Mo. banc 1984). The theory need not be one raised or argued by either party and may be raised *sua sponte* by the appellate court, provided the court incorporates principles raised in the petitions. *Id.* at 246. In this case, the order of summary judgment is supported by the "power of eminent domain" test, a theory plainly raised in the City's petition and motion for summary judgment. As such, the City's failure to raise or argue the "balancing of interests" test is irrelevant, as is the sufficiency of the evidence under that test.

The judgment is affirmed.

All concur.