COOPER COUNTY, by its governing body, the County Commission of Cooper County, Missouri, Respondent,

v.

CIRCUIT COURT OF THE 18TH JUDICIAL CIRCUIT OF MISSOURI, Appellant.

No. SC 85312.

Supreme Court of Missouri, En Banc.

Jan. 13, 2004.

Steven A. Fritz, Sedalia, for Appellant.

William F. McCullah, III, Forsyth, for Respondent.

DUANE BENTON, Judge.

The Cooper County Commission deemed unreasonable the salary of the deputy juvenile officer, 18th Judicial Circuit. The Judicial Finance Commission agreed. The Circuit petitioned this Court for review. *Mo. Const. art. V, sec. 4; section 477.600.7 RSMo.*[1] Reversed and remanded.

For several years, the officer's salary was funded by the Division of Youth Services, Department of Social Services (except for a fraction paid by the County, which is not at issue). The grant expired on June 30, 2003. The Circuit added six months' salary—plus attorney's fees for litigation—to its 2003 budget estimate. The Circuit submitted the budget to Cooper County. *Section 50.640.1.* The County shall appropriate "the amounts estimated as originally submitted...." *Id.*

Believing the requests were unreasonable, the County petitioned the JFC for review. *Section 50.640.2.* The JFC is charged "with mediating and, if necessary, adjudicating circuit court budget disputes." *In re The 1983 Budget For the Circuit Court of St. Louis County, Mo.,* 665 S.W.2d 943, 944 (Mo. banc 1984); *section 50.640.2.* The Circuit has "the burden of convincing the judicial finance commission that the amount estimated by it and included in the budget is reasonable." *Section 50.640.2.* The JFC then determines the reasonableness of the Circuit's estimate, by evaluating "the discrete and concrete elements proposed for it through which the item is given meaning." *Bosley v. Berra,* 688 S.W.2d 353, 355 (Mo. banc 1985). After the JFC decides, this Court may examine whether the requested budget items are reasonable. *In re 1984 Budget for Circuit Court of St. Louis County,* 687 S.W.2d 896, 899 (Mo. banc 1985). This Court reviews the JFC decision *de novo,* but "does not engage in any close reconsideration of the Commission's conclusions with respect to reasonableness of circuit court expenditures where the basis for such conclusions is apparent from the record." *Section 447.600.7; Bosley,* 688 S.W.2d at 354.

The JFC, ruling as a matter of law, did not require the County to fund the officer's salary. In 1998, the General Assembly enacted section 211.393, addressing the compensation, benefits, state aid, and annual budgets for juvenile court employees. *H.B.971, 1998 Mo. Laws 256.*

Generally, "juvenile court employees" in multicounty circuits became state employees. The legislature specifically defined

---

1. All statutory references are to RSMo 2000.

"juvenile court employee." The definition excludes "any person whose position is financed in whole or in part by a public or private grant." *Section 211.393.1(2).* On July 1, 1999—the effective date of section 211.393—the officer at issue was funded by a public grant, and did not become a state employee.

■ However, the County may still have to pay his salary. The Circuit's budget must contain a "separate section specifying all funds to be expended in the juvenile court." *Section 211.393.6.* This funding may be used for ". . . continuation of services funded by public grants or subsidy." *Id.* The officer provided services funded by a public grant. His services may be continued if included in the budget submitted to the County.

According to the County, this contradicts the purpose of section 211.393. The JFC summarizes this purpose:

> To require a county to pay "personal services" related expenditures would frustrate the intent of H.B. 971 [enacting section 211.393], which was to relieve the counties of the growth in the personal services portion of the counties' juvenile court budgets while requiring counties to continue to provide the same amount of funding for juvenile court operations.

The County believes that under H.B. 971, "services" that may be continued at County expense do not include "personal services."

**2.** Neither side presented any evidence of the amount of "maintenance of effort funding" for Cooper County. The county must annually budget "maintenance of effort funding," defined as:

> not less than the total amount budgeted for all employees of the juvenile court including any juvenile officer, deputy juvenile officer, or other juvenile court employees in

The relevant provisions of H.B. 971 do not confine "services" to non-personal services. Section 211.382 in H.B. 971 provides (emphasis added):

> As a provider of programs and *services* to children and families at the local level, the juvenile court system may recruit and retain qualified professionals to provide vital *services* to children in local communities and to the citizens of the state. In order to provide these critical *services,* an enhanced partnership between the state and the counties shall be established. . . .

Section 211.382 is construed *in pari materia* with 211.393.6, also enacted in H.B. 971. *See City of Washington v. Warren County,* 899 S.W.2d 863, 865 (Mo. banc 1995). In H.B. 971, the term "services" refers to all outputs of juvenile courts, whether from personnel, facilities, expenses, equipment, or a combination thereof. *See Section 211.382; cf. 211.393.6.* The legislature intended that "services" (that may be continued at County expense) include "personal services." [2]

■ The County further objects, citing the "termination" provision in section 211.393.3(2):

> Juvenile court employee positions added after December 31, 1997, shall be terminated and not subject to the provisions of subdivision (1) of this subsection, unless the office of the state courts administrator requests and receives an appropriation specifically for such positions.

The County argues that the officer's position was added after 1997, and should be

> calendar year 1997, minus the state reimbursements as described in this section received for the calendar year 1997 personnel costs for the salaries of all such juvenile court employees who become state employees.
>
> *Section 211.393.6.* Both sides agree that "maintenance of effort funding" is not relevant to this case.

terminated because there is no state appropriation for it. However, the "termination" provision must be construed together with subsections 211.393.1(2) and 211.393.6. *See City of Washington,* 899 S.W.2d at 865. These subsections specifically authorize the continuation of services funded by public grants, such as those of the officer here. The "termination" provision does not apply to the officer's position.

■ The Circuit also requests attorney's fees to litigate this issue. In 2000, 2001, and 2002, the Circuit budgeted the officer's salary *if* the grant expired. In all three years, the County sought review with the JFC. In 2000 and 2002, the grant renewed, and the JFC issued no decision. In 2001, however, the JFC—before the grant renewed—ruled that the funding request for the officer was unreasonable. By law, the ruling "shall take effect" if neither side seeks supreme court review. *Section 477.600.7 RSMo.*

■ "The expenditure for fees incurred in defense of these [court budget] activities" may be reasonable. *In re 1984 Budget,* 687 S.W.2d at 900. Here, the JFC deemed the request unreasonable because

> having ruled on an identical question of law involving these identical parties in *Cooper County,* Case No. 01–0059 [the 2001 decision], Respondent knew or should have known the outcome in the instant case, and therefore Respondent's request for attorney's fees is unreasonable.

■ The JFC, however, overlooks the nature of court budgets—they may differ from year to year. What is reasonable one year may not be reasonable another year. Principles of res judicata and collateral estoppel do not apply between separate fiscal years. *See State v. St. Louis County,* 603 S.W.2d 545, 547 (Mo. banc 1980). "The budget for the juvenile court for each year necessarily is a separate and distinct proposition, just as are annual taxes, the collection of which we have held does not involve res judicata." *Id.* The JFC's 2001 decision, therefore, does not preclude the Circuit's 2003 request.

To the extent that the JFC relied on principles of law decided in the 2001 decision, this opinion demonstrates that the JFC erred. Therefore, the JFC erred in denying attorney's fees outright.

Ruling as a matter of law, the JFC did not determine the reasonableness of the specific elements. The JFC's decision is reversed, and the case is remanded.

All concur.