297 S.W.3d 616 (2009)
In re The Matter of The REMOVAL OF HUMAN REMAINS FROM CEMETERIES IN KANSAS CITY, PLATTE COUNTY, Missouri.
City of Kansas City, Missouri, Appellant,
v.
Unknown and Unrepresented Persons and Olin Miller, Respondents.
No. WD 70006.
Missouri Court of Appeals, Western District.
November 10, 2009.
*617 Galen Beaufort, City Attorney, Dorothy L. Campbell, Assistant City Attorney Kansas City, MO, for Appellant.
Robert H. Shaw, Platte City, MO, Court-Appointed Counsel and Guardian ad litem for Unknown and Unrepresented Respondents.
M.A. Thalman, Gower, MO, for Respondent Miller.
Before Division III: THOMAS H. NEWTON, Chief Judge, and MARK D. PFEIFFER and KAREN KING MITCHELL, Judges.
KAREN KING MITCHELL, Judge.
The City of Kansas City, Missouri ("City") petitioned the Circuit Court of Platte County, Missouri ("trial court") to allow it to disinter and reinter human remains, pursuant to section 214.208.3 RSMo 2000, from four private cemeteries allegedly owned by City and located on the grounds of Kansas City International Airport ("KCI"). The trial court denied the petition, for the stated reason that City failed to show good cause for disinterment under that statute. City appeals, and we affirm the judgment of the trial court.

Factual and Procedural Background
City has acquired, through purchase and through eminent domain,[1] approximately *618 11,000 acres of land that has been designated as KCI property. On the KCI property, there are four small, private, family cemeteries. These cemeteries are known as the Brightwell Cemetery, the Miller-Rixey Cemetery, the Samuel Hoy Cemetery, and the Kimsey Cemetery. All four cemeteries are located at least some distance from a paved public road, and some are quite a distance from any road. At least one is difficult to access in wet weather. For this reason, the City does not currently maintain the cemeteries; they are maintained by distant family members of the decedents buried in the cemeteries. The Kimsey Cemetery has been completely plowed over and is now covered by a soybean field. There was one grave marker found at the Kimsey site, and it currently leans against a tree.
Many people believe that there are unmarked slave graves among and around these four cemeteries. Certainly there were many slaves in Platte County before the Civil War, and slaves were known to have been buried in and around family cemeteries like the ones at issue, but preliminary searches of suspected slave burial sites near the family cemeteries have not yielded any signs of human remains.
Recently, the City has entered into a lease with a third party, KCI Motorsports, that allows KCI Motorsports to develop an approximately 300-acre area on KCI property. The project will consist of a private club and track where members can drive their performance or sports cars in a road-rally-type course. The project also includes a clubhouse, a parking facility where members may store their cars, a driving school, and a rental facility where members can rent performance cars for use on the course. The Brightwell Cemetery is located on this 300-acre site, and the project plan currently has the cemetery site designated as a paved paddock area where cars will be prepared before going out onto the course. The start and finish line for the track is also located in this area. The lease is not conditional on the cemetery being moved.
In 2008, the City requested the introduction of House Bill ("H.B.") 1836 in the Missouri legislature. The bill eventually passed, amending section 137.115.1. The purpose of the bill was to change the "bonus value" method of taxing real property leasehold interests on airport property. Rather than ad valorem taxes being applied to the difference in value between the fair market rental value of the property and the actual rent paid by the leaseholder, the taxing authority was required to subtract the cost of new construction of any buildings on the property from the difference in rental value. This change could result in a significant decrease in the property value subject to ad valorem property taxation, in some cases resulting in a 100-percent property tax abatement. Among the effects of the passage of this bill is the reduction of property taxes that would be paid by the owners of the KCI Motorsports Park.
On February 22, 2007, in order to facilitate the KCI Motorsports project, allow for future developments on KCI property, and provide a more easily-accessible cemetery, the City petitioned the circuit court to disinter the remains found in the four family cemeteries and move them to another site located on KCI property. The City also proposed to excavate the ten-foot band surrounding each of the cemeteries in an attempt to locate any unmarked graves. If any remains were found in these surrounding areas, a more expansive search would ensue. The proposed cemetery site lies between two of the current *619 cemeteries and is large enough to accommodate the remains from all of the existing cemeteries. On March 17, 2008, the trial court held a trial on the matter, and on April 17, 2008, the court entered its order denying the City's petition.

Standard of Review
We review court-tried cases under the standard set forth in Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). We will sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Id.

Legal Analysis
Owners of cemeteries in Missouri are permitted by statute to move the human remains buried in those cemeteries under certain circumstances. Section 214.208.3,[2] the statute applicable[3] in this case, provides:
Every person or association which owns any cemetery in which dead human remains are buried or otherwise interred is authorized to disinter individual remains and either to reinter or rebury the remains at another location within the cemetery or to deliver the remains to a carrier for transportation out of the cemetery, all pursuant to a final order issued by the circuit court for the county in which the cemetery is located. The court may issue the order, in the court's discretion and upon such notice and hearing as the court shall deem appropriate, for good cause shown, including without limitation, the best interests of public health or safety, the best interests of the deceased person's family, or the reasonable requirements of the cemetery to facilitate the operation, maintenance, improvement or enlargement of the cemetery. The costs of such disinterment, relocation and delivery, and the related court proceedings, shall be paid by the persons so ordered by the court.
(Emphasis added.) The statute requires a showing of good cause, most likely because there is a general presumption against disturbing a body once it has been buried. See Felipe v. Vega, 239 N.J.Super. 81, 570 A.2d 1028, 1029 (N.J.Super.Ct. Ch. Div. 1989). In this case, the trial court found no good cause to disinter the remains in the four existing cemeteries and move them to the new proposed cemetery.
The City claims that the trial court erred in that the Missouri statutory provisions pertaining to airports grant the cities broad authority with respect to airport property, giving the City good cause per se.
Section 305.170 states that cities are
authorized to acquire, by purchase or gift, establish, construct, own, control, lease, equip, improve, maintain, operate, and regulate, in whole or in part, alone or jointly or concurrently with others, airports or landing fields for the use of airplanes and other aircraft ... and may use for such purpose or purposes any property suitable therefor that is now or may at any time hereafter be owned or controlled by such city[.]
*620 Further, any lands controlled by the City under section 305.170 "shall and are hereby declared to be acquired, owned, controlled, and occupied for a public purpose and as a matter of public necessity." § 305.190. In its first point, City claims that the legislature's declaration that control of airport land is for a public purpose and as a matter of public necessity is, in and of itself, sufficient to establish good cause under section 214.208.3.
While this argument has some merit,[4] it apparently was not raised before the trial court. The City's amended petition below does not mention section 305.170 or 305.190. It does not allege that the Missouri legislature granted the City broad discretion in the maintenance and control of airport property. The amended petition alleges that the disinterment and reinterment of the remains found in the four cemeteries at issue would benefit family members of the deceased and visitors to the cemetery; help maintain adequate airport security; and help the City "proceed with [its] efforts relating to the development, construction, maintenance and operation of the [a]irport." The City asked the court to consider all of the facts and weigh them in order to find good cause to disinter the remains found in the cemeteries pursuant to section 214.208.3. This is exactly what the trial court did. The City also failed to raise its good-cause-per-se argument in its motion to amend the judgment. That motion only challenges the trial court's alleged grant of injunctive relief, which we address below.
The City's second point on appeal is that, even if sections 305.170 and 305.190 are not conclusive evidence of good cause under section 214.208.3, they are still evidence of good cause and should have been one of the factors weighed by the court. Again, we note that the City did not raise this in the proceedings below. Moreover, when the trial court undertakes the weighing of competing facts to determine whether, as a whole, they amount to good cause, it is given broad discretion, both explicitly, in section 214.208.3, and also as part of the Murphy v. Carron review. A court only abuses its discretion in weighing the evidence when its ruling is "clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." In re Care & Treatment of Donaldson, 214 S.W.3d 331, 334 (Mo. banc 2007).
In this case, the trial court considered that the lease between the City and KCI Motorsports did not require removal of the Brightwell Cemetery, that the City presented no evidence of a current necessity for moving the three remaining cemeteries to allow for development, and found that the current location of the cemeteries did not pose a security threat. It also heard evidence that family members of the deceased buried in the cemeteries did not *621 wish to have the cemeteries moved and that the people who maintained the cemeteries did not find their current locations to be too remote or inaccessible for them to be properly maintained. All of these factors, considered with the presumption against disturbing a body once it has been buried, weigh against the City's petition and in support of the trial court's judgment.
There were also, however, factors favoring the City. As the City mentions, development of the KCI Motorsports project would develop the property in a manner that is both acceptable to the City and not incompatible with airport function. It would bring in lease income even if the passage of H.B. 1836 significantly, if not altogether, diminishes the property tax income potential of the development. And the development could also help the City attract other desirable projects that would be appropriate for location on KCI property. The trial court apparently found that this project could proceed around the cemeteries, at least for the time being. Accordingly, the court did not abuse its discretion in finding that no good cause existed under section 214.208.3.[5]
For its third point on appeal, the City claims that the trial court erred to the extent that it found that: (1) there was no current necessity for disinterment, (2) disinterment did not further the public welfare, and (3) these two findings provided conclusive evidence that no good cause existed. The City notes that section 214.208.3 requires the court to determine good cause considering "without limitation, the best interests of public health or safety, the best interests of the deceased person's family, or the reasonable requirements of the cemetery to facilitate the operation, maintenance, improvement or enlargement of the cemetery." The City argues that necessity and public welfare are not required findings in a court's determination of whether good cause exists. While the City is correct in this assertion, and the trial court's order of judgment does not fully set forth its findings of fact and the complete reasoning process, the trial court heard evidence on many issues, and we are persuaded that the trial court made its finding that no good cause existed by considering all of the evidence presented to it and not just on the absence of an immediate necessity and consideration of the public welfare. The City's third point is denied.
Finally, the City claims that the trial court improperly granted injunctive relief without jurisdiction to grant such relief. The court's judgment order reads:
WHEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:
a. That Petitioner's First Amended Petition to Disinter and Reinter Bodies is hereby denied and judgment is entered against Petitioner on said First Amended Petition.
b. Petitioner shall not disturb or disinter individual remains located in, *622 around and in the vicinity of the cemeteries known as Kimsey, Miller/Rixey, Samuel Hoy and Brightwell.
The City claims that subparagraph b. constitutes an improper order of injunctive relief. Respondents counter, and we agree, that subparagraph b. is merely a restatement of subparagraph a. rather than an affirmative entry of injunctive relief. The order does not state that the City is permanently restrained and enjoined from taking any particular action, language that is normally included in an order granting injunctive relief. This part of the order may be read as simply denying the City's petition. The City's fourth point is also, therefore, denied.
THOMAS H. NEWTON, Chief Judge, and MARK D. PFEIFFER, Judge, concur.
NOTES
[1] Although some of the KCI property was acquired via eminent domain, all of the land containing the cemeteries was acquired through purchase.
[2] All statutory references are to RSMo 2000.
[3] Section 214.208.3 is the statute under which the trial court conducted its analysis. It applies to persons who "own[] any cemetery." There is some dispute as to whether the City actually owns two of the four cemeteries at issue in this case. The trial court did not rule on this issue, finding no good cause under the statute to permit disinterment of the remains. Similarly, for purposes of this appeal, we will assume, without deciding, that the City does, in fact, own the cemeteries.
[4] The effect of the legislative "public necessity" declaration on a court's determination of good cause under the cemetery statute is an issue of first impression in Missouri. Typically, the statutory provisions pertaining to airports and the accompanying declaration as to public purpose and public necessity are interpreted in the context of eminent domain. In addition, it is not clear that simply because property owned for operation as an airport is to be deemed land held for a "public purpose" and as a "public necessity" that the removal of human remains for such end is per se for "good cause." However, courts have interpreted cities' power with respect to airport property very broadly. See City of Washington v. Warren County, 899 S.W.2d 863, 865 (Mo. banc 1995); City of Kansas City v. Hon, 972 S.W.2d 407, 410 (Mo.App. W.D. 1998); City of St. Louis v. City of Bridgeton, 705 S.W.2d 524, 531 (Mo.App. E.D.1985).
[5] There is no evidence that the trial court considered the possibility of the presence of unmarked slave graves in its decision. The evidence supporting the presence of slave grave sites is sketchy. While it is known that many slaves lived in Platte County and that they are certainly buried somewhere in the area, preliminary searches have not resulted in any such remains being found. While there is strong evidence that some unmarked graves are present in the cemeteries, it is not certain that these are slave graves, and in any event, all remains found at the cemeteries, marked or unmarked, would be reinterred in the new cemetery proposed by the City. Further, the presence of slave graves, even if conclusively shown, could be argued to weigh in favor of either side of this case. Therefore, the court did not err in omitting this consideration from its good-cause determination.