Terrese R. GREENE, Appellant,

v.

Janet SCHNEIDER, Terri Coates and Joseph Conley, Respondents.

No. ED 96572.

Missouri Court of Appeals,
Eastern District,
Division Four.

July 31, 2012.

James S. Collins II, St. Louis, MO, for appellant.

Dana Ceresia and Denise McElvein, Assistant Attorney General, St. Louis, MO, for respondents.

PATRICIA L. COHEN, Judge.

## Introduction

Terrese Greene (Plaintiff) appeals the trial court's grant of summary judgment to Janet Schneider, Terri Coates, and Joseph Conley (collectively, "Defendants") on Plaintiff's claim of negligence and/or civil

conspiracy.[1] Plaintiff contends that the trial court erred in finding that Plaintiff's claim of civil conspiracy fails as a matter of law and that the doctrines of official immunity and public duty shield Defendants from liability. We affirm.

### Background

The St. Louis Community Release Center (SLCRC) is a Missouri Department of Corrections transitional housing facility for offenders released from prison and probationers having difficulty living in the community. The majority of the residents at the SLCRC are permitted to leave the facility at the discretion of SLCRC staff, while others are housed in a locked unit.

As a Missouri Department of Corrections facility, the staff at the SLCRC is "expected to be prepared in case of emergencies." As part of their emergency training, members of the staff periodically engage in "emergency scenarios" that help prepare them for actual emergencies. The SLCRC's "Emergency Management Committee" is responsible for planning emergency training activities for the staff. Defendants Schneider, the Superintendent of the SLCRC; Coates, the Chief of Custody; and Conley, a Corrections Training Officer, were all members of the Emergency Management Committee.

At a meeting in May 2003, the Emergency Management Committee decided to conduct an emergency scenario for staff training purposes. Schneider assigned a team of Conley, Coates, and Associate Superintendent Bernice Baver to develop a scenario "which they felt would test some aspect of [the staff's] preparedness."

Conley, Coates, and Baver devised a "disgruntled spouse" scenario. On May 19, 2003, Coates sent Schneider a memorandum outlining the scenario and proposing that it occur on May 29, 2003. The scenario called for Conley and Coates, beginning on May 28, 2003, to start a rumor of marital troubles between Conley and his wife, Officer Kim Conley ("Kim"),[2] who also worked at SLCRC. According to the memo, Conley would "voice his dissatisfaction with their constant domestic squabbles and threaten to become aggressive towards Kim." The following morning, Conley would arrive at SLCRC "in a disturbed state and reeking of alcohol." If admitted into the "airlock," Conley would brandish a weapon "and demand entry into the north corridor." The memo anticipated that "[t]he control center officers should observe [Conley] with the weapon and keep him secure in the airlock."

After Coates presented the scenario, Schneider met with the Assistant Director of Probation and Parole for the Department of Corrections and received approval for the exercise. After that meeting, Schneider changed the date of the scenario from May 29, 2003 to May 28, 2003 and instructed Coates that she "did not want them to use a gun."

On May 28, 2003, after Coates informed Kim of the plan, Conley and Kim pretended to argue as Kim was leaving work that day. Plaintiff witnessed the argument. Coates broke up the argument and told Kim to go home.

The following morning, Conley arrived at the SLCRC at approximately 9:00 a.m. In the lobby of the facility, Conley approached a window to the control center,

---

1. The specific nature of Plaintiff's claim is unclear from the face of Plaintiff's petition. The trial court described Plaintiff's petition "as asserting a single tort claim of negligence and/or civil conspiracy."

2. Because Officer Kim Conley shares the same last name as Joseph Conley, we refer to her by her first name. No disrespect is intended.

the room containing the controls for the locks on all the doors in the facility. Conley showed his badge to Theresa Cochrell, the corrections officer on duty in the control center, and stated: "Let me in." Cochrell unlocked the door leading into the SLCRC's airlock. Once inside the airlock, Conley approached the door to the control center. Through a window next to the door, Conley asked Cochrell "if his wife was in." Cochrell answered, "I don't know," and let Conley through the door leading out of the airlock and "into the facility."

Plaintiff entered the sign-in room of the facility at around 9:00 that morning and observed Conley speaking with another officer. Plaintiff saw a knife in Conley's hand and heard Conley say, "I can't believe that bitch let me in the air lock with this knife." Plaintiff radioed a "ten five," signaling that she needed assistance. Conley stated, "Who the fuck you calling a ten five on?," and Plaintiff radioed a "ten five" again. Conley then grabbed Plaintiff around the neck with his left arm, putting her in a choke hold. He held a gun to her head and stated, "Bitch, drop that radio." Plaintiff heard Conley threaten to shoot her, and threaten to shoot Cochrell, if Cochrell did not open the door to the locked unit where Kim was working. Conley held Plaintiff in the choke hold for about fifteen minutes before releasing her.

Immediately after the exercise concluded, Captain Steven Parker informed Plaintiff that the exercise was a drill. Coates convened a "debriefing" meeting in the Administrative Office Conference Room to discuss the exercise. During the meeting, Plaintiff could not stop crying. At the conclusion of the meeting, Plaintiff met with Deborah Beecham of the SLCRC's "Peer Support Team." After meeting with Beecham, Plaintiff left work and did not return to work for the next two days. On June 3, 2003, Plaintiff was "[taken] off work" by a worker's compensation doctor. Plaintiff did not return to work until 2006.

On August 25, 2008, Plaintiff filed a petition against Schneider, Coates, and Conley for injuries stemming from the training exercise. Plaintiff alleged that "Defendants Schneider, Coates and Conley conspired among themselves to set up a false dangerous situation" and "failed to use ordinary care" in allowing Conley to hold Plaintiff hostage and put a gun to her head. Plaintiff further alleged that she suffered several injuries as a result of "the joint and concurrent negligence of all Defendants." In a subsequent amendment by interlineation, Plaintiff claimed specifically that Defendants entered into a "civil conspiracy" to have Defendant Conley use a gun during the scenario in violation of "the State of Missouri and/or the Department of Corrections and/or the St. Louis Community Release Center's Rules and Regulations."

Schneider, Coates, and Conley each raised affirmative defenses in their answers to Plaintiff's amended petition, contending, *inter alia*, that 1) Plaintiff failed to plead the requisite elements of a civil conspiracy and thus "fail[ed] to state a claim on which relief could be granted;" and 2) the doctrines of official immunity and public duty shielded Defendants from liability. After discovery, Defendants asserted these defenses in support of their motions for summary judgment.[3]

On April 1, 2011, the trial court granted summary judgment to each of the Defendants on the grounds that Plaintiff's claim

---

**3.** Schneider and Coates jointly filed a motion for summary judgment. Conley filed his motion for summary judgment separately.

for civil conspiracy fails as a matter of law and that the doctrines of official immunity and public duty shield Defendants from liability for Plaintiff's claims. Plaintiff appeals.

### Standard of Review

Our review of a trial court's grant of summary judgment is "essentially *de novo.*" *ITT Commercial Fin. Corp v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). We view all facts "in the light most favorable to the party against whom judgment was entered," and "[w]e accord the non-movant the benefit of all reasonable inferences from the record." *Id.* However, facts which support the motion for summary judgment "are taken as true unless contradicted by the non-moving party's response." *Id.*

### Discussion

In her sole point on appeal, Plaintiff contends that the trial court abused its discretion in granting Defendants' motions for summary judgment. More specifically, Plaintiff contends that the trial court erred in determining that Plaintiff's civil conspiracy claim "fails as a matter of law" and that Defendants are "shielded from liability" by the doctrines of official immunity and public duty.[4]

A defendant is entitled to summary judgment under Rule 74.04(c) if the defendant can establish:

(1) facts that negate *any one* of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find

the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense.

*ITT,* 854 S.W.2d at 381. Where the facts entitling the defendant to judgment as a matter of law "are beyond dispute, summary judgment is proper." *Id.* at 381.

▮▮▮ "A civil conspiracy is an agreement or understanding between two or more persons to do an unlawful act, or to use unlawful means to do an act which is lawful." *Envirotech, Inc. v. Thomas,* 259 S.W.3d 577, 586 (Mo.App. E.D.2008). "Strictly speaking, the fact of the conspiracy is not actionable, but the action sounds in tort and is in the nature of an action on the case upon the wrong done under the conspiracy alleged." *Id.* In other words, "a conspiracy does not give rise to a civil action unless something is done pursuant to which, absent the conspiracy, would create a right of action against one of the conspirators." *Id.* "Conspiracy is not itself actionable in the absence of an underlying wrongful act or tort." *Williams v. Mercantile Bank of St. Louis NA,* 845 S.W.2d 78, 85 (Mo.App. E.D.1993).

▮▮▮ Here, Plaintiff contends that the underlying wrongful act or tort was Defendant Conley's violation of Section 217.360.[5] Section 217.360.1 provides, in pertinent part:

It shall be an offense for any person to knowingly deliver, attempt to deliver, have in his possession, deposit or conceal in or about the premises of any correctional center, or city or county jail, or private prison or jail: . . . (4) Any gun, knife, weapon, or other article or item of

---

4. Plaintiff does not contend on appeal that she stated a cause of action under a negligence theory.

5. All statutory citations are to RSMo (2000) as supplemented.

personal property that may be used in such manner as to endanger the safety or security of the correctional center, or city or county jail, or private prison or jail or as to endanger the life or limb of any offender or employee of such a center.

The statute further provides that any violation of subsection 1, subdivision 4 "shall be a class B felony." Section 217.360.2.

Despite the existence of Section 217.360, Defendants contend that the use of a gun or a knife in the SLCRC "does not constitute a wrong by which a person can be held civilly liable." As support for this argument, Defendants rely on *Christy v. Petrus*, 365 Mo. 1187, 295 S.W.2d 122 (Mo. banc 1956), which holds that "a statute which creates a criminal offense and provides a penalty for its violation will not be construed as creating a new civil cause of action independently of the common law, unless such appears by express terms or by clear implication to have been the legislative intent." *Id.* at 126.

Plaintiff, however, does not argue that the legislature intended Section 217.360 to create a new civil cause of action. Instead, Plaintiff essentially claims that, regardless of whether Section 217.360 creates a new cause of action, a violation of Section 217.360 can serve as the wrongful act underlying a civil conspiracy claim. As support for this contention, Plaintiff states: "A murderer can be sued civilly for the wrongful death of the victim ..." [and] "[a] druggist who dilutes cancer medication in order to greatly increase his income ... can be held civilly and criminally liable for his nefarious acts...."

We do not find Plaintiff's argument persuasive. Plaintiff cites no authority for the proposition that a violation of Section 217.360 can serve as the basis of a civil conspiracy claim. *See In re Marriage of Spears*, 995 S.W.2d 500, 503 (Mo.App. S.D. 1999) ("It is an appellant's obligation to cite appropriate and available precedent if she expects to prevail.") Furthermore, Plaintiff's two examples of situations in which criminal activity gives rise to civil liability are inapposite. For both examples, a defendant's potential civil liability arises out of a separate civil statute, not the criminal statute prohibiting the conduct. *See* Section 537.080 (permitting certain persons to bring a civil cause of action for wrongful death); Section 407.025 (permitting private civil cause of action for fraud in the sale of goods or services).

Because we agree with the trial court that Plaintiff's claim of civil conspiracy fails as a matter of law, we need not reach the issue of whether Defendants are entitled to immunity under either the official immunity or public duty doctrines. *See City of Washington v. Warren County*, 899 S.W.2d 863, 868 (Mo. banc 1995) (appellate court may uphold a grant of summary judgment on any theory).[6] Point denied.

---

6. We note, however, that even if we were to reach the issue of Defendants' immunity, Plaintiff would not be entitled to relief. The doctrine of official immunity protects public officials from liability for discretionary acts performed in the course of their official duties, except those actions that are "willfully wrong or done with malice or corruption." *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. banc 2008). Plaintiff concedes that "[t]he entire training exercise, from conception through execution, consisted of *discretionary actions* ... [,]" (emphasis added) but contends that Defendants took such actions "in bad faith" and "possibly" exhibited malice. There is no evidence in the record to support Plaintiff's conclusory assertion that Defendants acted with malice or bad faith. Furthermore, though Plaintiff argues that Defendants' actions were not part of their official duties, the undisputed evidence from the record demonstrates that all three Defendants were members of the Emergency Management Committee responsible for planning emergency training exercises at the SLCRC.

## *Conclusion*

The judgment of the motion court is affirmed.

KURT S. ODENWALD, C.J., and ROBERT M. CLAYTON III, J., concur.