

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| JOHNNY BRISCOE, | ) | No. ED100909 |
| | ) | |
| Plaintiff/Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | |
| | ) | Hon. Richard C. Bresnahan |
| MARGARET WALSH and | ) | |
| LISA CAMPBELL, | ) | |
| | ) | |
| Defendants/Respondents. | ) | Filed: October 14, 2014 |
| | ) | |

## Introduction

Johnny Briscoe (Appellant) appeals from the trial court's summary judgment in favor of

Margaret Walsh (Walsh) and Lisa Campbell (Campbell) (collectively Respondents) on

Appellant's four-count petition alleging negligence and negligent performance of assumed duty

against Walsh and Campbell, respectively. We affirm.

## Factual and Procedural Background

In 1983, Appellant was tried by a jury in the Circuit Court of St. Louis County and

convicted of forcible rape, sodomy, second-degree robbery, first-degree burglary, stealing, and

three counts of armed criminal action, all committed against Victim on October 21, 1982.

Appellant was sentenced as a persistent offender to a total of 45 years. In 1984, on appeal, the

stealing conviction was overturned.

In July of 2006, Appellant was exonerated from his convictions for the crimes committed in October 1982 by DNA evidence extracted from a cigarette butt found at the scene and preserved in the St. Louis County Police Department crime lab freezer. Appellant was released from prison on July 19, 2006, after serving more than 23 years in prison.

On November 7, 2008, Appellant sued St. Louis County, St. Louis County Police Officers Lane Hollandsworth and Stephen Deen, Sr., and St. Louis County Police Captain Jack Webb in federal district court for money damages based on his wrongful incarceration pursuant to 42 U.S.C. Section 1983 and the Fourteenth Amendment of the U.S. Constitution. In that suit, Appellant alleged the defendants violated his rights to a fair trial and due process, by using undue influence and an intentionally or recklessly suggestive identification procedure that caused Victim to incorrectly identify Appellant as the perpetrator of the crimes against her, by failing to adequately investigate the crimes, and by suppressing exculpatory evidence. The court dismissed the complaint against the County for failure to state a claim, granted summary judgment to the individual defendants, and denied as futile Appellant's motion for leave to file an amended complaint against the County and denied his motion to alter or amend the judgment.

Appellant appealed the district court's judgment to the U.S. Court of Appeals for the Eighth Circuit. The Eighth Circuit affirmed the district court's judgment.

Appellant then filed suit on June 29, 2011, in the Circuit Court of St. Louis County against Respondents, who are employed by St. Louis County as lab technicians in the St. Louis County Police Department, alleging negligence and negligent performance of assumed duty and seeking money damages based on his wrongful incarceration from 2001 until 2006. The action of Respondents that Appellant asserts was negligent was the performance of Captain Jack Webb's August 31, 2001 request for the search and retrieval of "any and all" physical "evidence,

2

including DNA evidence," collected during the criminal investigation of the crimes for which Appellant was convicted in 1983. Appellant contends Respondents negligently failed to locate and to retrieve, when requested by their supervisor, the cigarette butt evidence (hereinafter referred to as Q-4) that was stored in a crime lab freezer, DNA testing of which ultimately exonerated him in 2006. Appellant maintains Respondents also falsely reported in 2001 that all evidence received by the lab in Appellant's case had been returned to the police department's Property Control unit on December 15, 1982, and that all physical evidence at Property Control had either been destroyed or checked out to court. This report was incorrect with regard to Q-4, which was ultimately identified on November 17, 2005, after an April 2004 power outage in the Crime Lab caused the contents of all the freezers to be retrieved and inventoried. Appellant maintains that but for Respondents' negligent failure to search the lab freezers despite their report that they did so, Q-4 would have been found and available for DNA testing in October of 2001, the results of which would have exonerated Appellant and led to his release from prison in 2001 instead of five years later in 2006.

Respondents moved for summary judgment on Appellant's claims based on res judicata and collateral estoppel stemming from the federal case, and the public duty doctrine. The trial court agreed, and granted summary judgment in Respondents' favor based on these three doctrines on December 11, 2013. This appeal follows.

<u>Points on Appeal</u>

In his first point, Appellant claims the trial court erred in granting summary judgment based on the doctrine of res judicata because the unsuccessful federal suit does not preclude the bringing of the negligence claims against Campbell and Walsh, in that there is no identity in the causes of action between the lawsuits.

3

In his second point, Appellant asserts the trial court erred in granting summary judgment based on the doctrine of res judicata because the unsuccessful federal suit does not preclude the bringing of the negligence claims against Campbell and Walsh, in that they were not parties to, or in privity with a party to, the federal lawsuit.

In his third point, Appellant maintains the trial court erred in granting summary judgment because the unsuccessful federal lawsuit does not collaterally estop him from bringing the negligence claims against Campbell and Walsh, in that the issue of their negligence was not litigated in the federal lawsuit.

In his fourth point, Appellant contends the trial court erred in entering summary judgment because genuine disputes of material fact exist regarding the applicability of the public duty doctrine in that the record supports Campbell's and Walsh's negligence occurred in the performance of a ministerial task and Appellant was a particular, identifiable individual who it was reasonably foreseeable would be harmed by a breach of their duty.

Standard of Review

This Court's review of the grant of summary judgment is essentially de novo. ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp., 854 S.W.2d 371, 376 (Mo.banc 1993). We need not defer to the trial court's order, as its judgment is founded on the record submitted and the law. Id. Summary judgment is appropriate only when the moving party demonstrates a right to judgment as a matter of law based on facts about which there is no genuine dispute. Id.; Rule 74.04(c). See also, Lauber-Clayton, LLC v. Novus Properties Co., 407 S.W.3d 612, 617-18 (Mo.App. E.D. 2013). If the trial court's grant of summary judgment is sustainable on any theory as a matter of law, it must be sustained. City of Washington v. Warren County, 899 S.W.2d 863, 868 (Mo.banc 1995).

4

<u>Discussion</u>

<u>Res Judicata – Points I and II</u>

For res judicata to adhere, four identities must occur:  1) identity of the thing sued for; 2) identity of the cause of action; 3) identity of the persons and parties to the action; and 4) identity of the quality of the person for or against whom the claim is made.  <u>King General Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints</u>, 821 S.W.2d 495, 500 (Mo.banc 1991).  Unlike collateral estoppel, res judicata applies not only to points and issues upon which the court was required by the pleadings and proof to form an opinion and pronounce judgment, but to every point properly belonging to the subject matter of litigation and which the parties, exercising reasonable diligence, might have brought forward at the time.  <u>Id.</u>  Put otherwise, a party may not litigate an issue and then, upon an adverse verdict, revive the claim on cumulative grounds which could have been brought before the court in the first proceeding.  <u>Id.</u>  "Separate legal theories are not to be considered as separate claims, even if 'the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief.'"  <u>Id.</u>, quoting <u>Siesta Manor, Inc. v. Community Federal Savings and Loan Association</u>, 716 S.W.2d 835, 839 (Mo.App. E.D. 1986).  The doctrine takes on the character of the rule against splitting a cause of action and it is aptly stated in <u>Burke v. Doerflinger</u>, 663 S.W.2d 405, 407 (Mo.App. E.D. 1983):

> Res judicata and splitting a cause of action are closely related because both are designed to prevent a multiplicity of lawsuits.
> A cause of action which is single may not be split and filed or tried piecemeal, the penalty for which is that an adjudication on the merits in the first suit is a bar to a second suit.  In general, the test for determining whether a cause of action is single and cannot be split is:  1) whether separate actions brought arise out of the same act, contract or transaction;  2) or whether the parties, subject matter and evidence necessary to sustain the claim are the same in both actions.  The word "transaction" has a broad meaning.  It has been defined as the aggregate of all the circumstances which constitute the foundation for a claim.  It also

5

includes all of the facts and circumstances out of which an injury arose. [Citations omitted].

King General Contractors, 821 S.W.2d at 501. The Restatement (Second) of Judgments § 24 (1982) articulates the principle in this manner:

Sec. 24. Dimensions of "Claim" for Purposes of Merger or Bar--General Rule Concerning "Splitting"

(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

(2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

King General Contractors, 821 S.W.2d at 501-502.

Appellant claims the parties and the causes of action in the two cases are different. In the federal suit, Appellant's cause of action is premised on a violation of his civil rights based on the officers' alleged intentional and reckless actions in prosecuting him of certain crimes against Victim; and in the state case, Appellant's cause of action is based on the lab technicians' negligent performance of their duties in locating evidence to exonerate him of those crimes. However, these differences are superficial in nature. In both the underlying suit and the federal suit, Appellant seeks money damages for his wrongful incarceration. The federal case was brought against St. Louis County and three of its police officers, and the state case against two St. Louis County police department crime lab technicians. In both cases, the individual defendants were sued in their official capacities as employees of St. Louis County and its police department in connection with their actions and/or inactions in regard to Appellant's prosecution, incarceration and/or exoneration in Cause No. 21CCR-482307.

6

The two actions arise out of the same underlying occurrence, to-wit: Appellant's wrongful incarceration. The subject matter of both cases is the same. Appellant seeks damages in both cases for the time he spent in prison for charges of which he is actually innocent. In the instant case, Appellant circumscribed Respondents' liability to only the 5 years between 2001 and 2006 of the entire 23-year period he spent incarcerated because Respondents did not come upon the scene and play a part in Appellant's continuous wrongful incarceration until that time. Put another way, in the federal case Appellant contends defendants Hollandsworth and Deen wrongfully put him in prison and defendant Captain Webb kept him there and in the state case Appellant contends Respondents, under the auspices of Captain Webb, negligently kept him there.

In his federal petition, Appellant refers to and recites the actions that form the basis for his second lawsuit. In paragraph 50, Appellant alleges he sought a court order requiring another search for evidence and for an accounting of the missing evidence, and as a result of a court-ordered search, Defendant Jack Webb, Commander of St. Louis County's Bureau of Criminal Investigation, submitted an affidavit and letter stating that *crime lab personnel had searched the evidence storage freezers and been unable to locate the three cigarette butts or other evidence associated with Appellant*. In paragraph 51, Appellant asserts,

> The affidavit submitted by Defendant Jack Webb was false, incomplete and misleading, and was submitted to the court without a reasonable basis for making such assertions. *Contrary to the assertions stated in the affidavit, the freezers were not searched and the three cigarette butts were in the freezers at all relevant times*. Defendant Jack Webb acted deliberately and with reckless disregard to [Appellant's] established and known Constitutional rights by thwarting the testing of exonerating DNA evidence and thereby depriving [Appellant] of a fair trial and his Constitutional right to liberty and rights guaranteed by the fifth and fourteenth amendments.

7

(Emphasis added.) These italicized acts of omission by unnamed crime lab personnel set out in the federal petition form the basis of the asserted liability of the named respondents in the instant case, crime lab technicians Walsh and Campbell.

A party may not litigate an issue and then, upon an adverse verdict, revive the claim on cumulative grounds which could have been brought before the court in the first proceeding. King General Contractors, Inc. 821 S.W.2d at 500. Separate legal theories are not to be considered as separate claims, even if they emphasize different elements of the facts or call for different measures of liability. Siesta Manor, Inc., 716 S.W.2d at 839. In the federal case, the emphasized wrongdoing was in Captain Webb's supervising and reporting of the allegedly fruitless search for the evidence which ultimately exonerated Appellant. In the instant case, it is the negligence of the searchers themselves that forms the basis for Appellant's lawsuit. A comparison between the two reveals that in this case, Appellant is merely casting his net a second time under a different legal theory emphasizing different elements or shadings of the same facts. Appellant is impermissibly splitting his cause of action after losing the first time. His claims against Respondents could have been brought before the federal court in the prior proceeding and are barred by res judicata in the instant one. King General Contractors, Inc., 821 S.W.2d at 500.

Based on the foregoing, Points I and II are denied.

### Public Duty Doctrine – Point IV

The public duty doctrine protects a public officer from civil liability for his or her negligence. Benson v. Kansas City, Bd. of Police Com'rs, 366 S.W.3d 120, 124 (Mo.App. W.D. 2012). The public duty doctrine recognizes that a public officer owes a duty to the public, and not to a particular individual. Id. "The public duty doctrine states that a public employee is not civilly liable for the breach of a duty owed to the general public, rather than a particular

8

individual." Southers v. City of Farmington, 263 S.W.3d 603, 611 (Mo.banc 2008). In other words, the doctrine negates the duty element of negligence so that an individual plaintiff cannot succeed in establishing a cause of action for negligence against a public officer. Id. at 612. The public duty doctrine applies to both ministerial and discretionary functions. Jungerman v. City of Raytown, 925 S.W.2d 202, 205 (Mo.banc 1996).

The public duty doctrine does not insulate a public employee from all liability, as he could still be found liable for breach of ministerial duties in which an injured party had a "special, direct, and distinctive interest." Southers, 263 S.W.3d at 611-12, quoting State ex rel. Twiehaus v. Adolf, 706 S.W.2d 443, 445 (Mo.banc 1986). This exception exists when injury to a particular, identifiable individual is reasonably foreseeable as a result of a public employee's breach of duty. Southers, 263 S.W.3d at 612; Jungerman, 925 S.W.2d at 205. Whether an individual has such a private interest depends on the facts of each case, not on broad pronouncements about the usual status of relevant functions. Southers, 263 S.W.3d at 612.[1]

In the instant case, Respondents owed a duty to the general public as lab technicians for the Bureau of Criminal Investigation to maintain and analyze evidence collected in crime investigations. Captain Webb, Respondents' supervisor and Commander of the Bureau of Criminal Investigation, directed Respondents to perform a search for certain evidence collected in crime scene investigations of nine cases at the behest of the prosecutor on behalf of the State. The purpose of the task was to collect evidence which could be DNA tested to determine the integrity of those past convictions which were initiated and prosecuted by the State. This task and its purpose fall squarely within Respondents' duty to the general public as lab technicians to maintain and analyze evidence. The State, in the form of the prosecutor, initiated the

---

[1]Another exception to the public duty doctrine is where defendant public employees act in bad faith or with malice. Southers, 263 S.W.3d at 612. Appellant has not made a showing of bad faith or malice in this case.

9

assignment. Captain Webb, as Respondents' boss, requested Respondents perform the search as part of their official duties. Respondents owed a duty to the public to perform their jobs and did not owe a personal duty to Appellant to find, collect and analyze evidence exonerating him in particular.

In summary, Respondents' duty is to the public to maintain the integrity of the evidence used by the State to prosecute individuals accused of violating laws enacted for the safety and benefit of the public. Because Respondents did not owe a duty to Appellant personally and individually, application of the public duty doctrine leaves him unable to prove all the elements of his claim for negligence against them, and thus they are entitled to summary judgment. Southers, 263 S.W.3d at 612. Based on the foregoing, Point IV is denied.

Because we agree with the trial court that Appellant's claims of negligence against Respondents are barred by res judicata, the rule against splitting a cause of action, and the public duty doctrine, we need not reach the issue of whether collateral estoppel bars them as well. See Greene v. Schneider, 372 S.W.3d 887, 891 (Mo.App. E.D. 2012) and City of Washington, 899 S.W.2d at 868 (appellate court may uphold a grant of summary judgment on any theory). Point III is thus denied as moot.

### Conclusion

The judgment of the trial court is affirmed.[2]

_____
Sherri B. Sullivan, P.J.

Mary K. Hoff, J., and
Philip M. Hess, J., concur.

---

[2] Missouri allows those who can prove they were determined to be actually innocent through DNA testing to make a claim for state compensation in Section 650.058 RSMo. 2006.